UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

CHHATRALA GRAND RAPIDS, LLC,                Chapter 11
                                            Case No. 19- 03908
              Debtor.                       Hon. John T. Gregg
_____)

In re:

BHOGAL ENTERPRISES, LLC,                    Chapter 11
                                            Case No. 19-03909
              Debtor.                       Hon. John T. Gregg
_____)

**FIRST DAY MOTION OF DEBTORS FOR ENTRY OF ORDER (I)
AUTHORIZING BUT NOT DIRECTING THE DEBTOR TO PAY
<u>CERTAIN PREPETITION WAGES, (II) GRANTING RELATED RELIEF</u>**

**CHHATRALA GRAND RAPIDS, LLC and BHOGAL**

**ENTERPRISES, LLC,** Debtors and Debtor-in-Possession in the above-captioned

Chapter 11 cases, through their counsel, Steinberg Shapiro & Clark, respectfully

move this Court for approval of the following Motion and in support thereof,

states the following:

<u>**Background**</u>

1.      On September 16, 2019, (the "Commencement Date"), Chhatrala

Grand Rapids, LLC and Bhogal Enterprises, LLC, commenced with this Court

voluntary cases under Chapter 11 of Title 11 of the United States Code (the

"Bankruptcy Code"). The Debtors are authorized to continue to operate their

business and manage their property as debtors-in-possession pursuant to Sections

1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory

committee of creditors has been appointed in this chapter 11 case.

2.      Chhatrala Grand Rapids, LLC ("Chhatrala") and Bhogal Enterprises,

LLC ("Bhogal", and collectively "Debtors") operate as the Crowne Plaza Grand

Rapids, a 320-room full-service hotel built in 1980. Chhatrala was acquired by its

current owners in October 2017 when they purchased its equity. The property

features all traditional services of an upscale hotel of this size with other amenities

including a restaurant, lounge, fitness facility, indoor/outdoor swimming pool,

business center, sundries shop and meeting spaces.  The hotel is in an ideal

location, approximately 12 miles from Downtown Grand Rapids and 4.4 miles

from the Gerald Ford International Airport.

3.      Consistent with their purchase of the equity of Chhatrala in 2017,

Debtors' principals formed Bhogal to acquire the assets and liabilities from

Chhatrala.

4.      The Debtors' financial issues are primarily a factor of the cost of

improvements required by the Debtors' franchisor, including that the Debtors use

certain expensive contractors, and Debtors' inability to fund these

improvements.  The inability to fund improvements has capped the amounts the Debtors can charge for rooms, and has impaired the Debtors' ability to service their debt.

5.       While a transfer of the franchise agreement from Chhatrala to Bhogal was effected prior to the commencement of these proceedings, and additional bank accounts were opened in the name of Bhogal, a complete transfer was not effected prior to the filing of these cases.  Debtors have filed a motion for substantive consolidation to treat the assets and liabilities of each of the Debtors as the assets and liabilities of Bhogal Enterprises, LLC and effectively complete the process started by the Debtors in February 2019.

## Jurisdiction

6.       This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

7.       By this Motion, the Debtors request authority, pursuant to Sections 105(a), 363, and 507(a) of the Bankruptcy Code, but not direction, to pay certain prepetition amounts, and maintain and continue to honor and pay, in their sole discretion, all amounts with respect to the Debtors' business practices, programs, and policies for their employees or supplemental workforce as such were in effect

on the Commencement Date and as such may be modified or supplemented from time to time in the ordinary course of business as provided herein (the "**Workforce Obligations**"), including (a) Unpaid Compensation; (b) Deductions and Payroll Taxes; (c) the Other Employee Programs (each as defined herein); and (d) related relief.

8.      A proposed form of order granting the relief requested in the Motion on an interim basis is attached hereto (the "**Proposed Interim Order**").

**Compensation and Benefits Programs**

9.      As with similarly situated Companies, the Debtors maintain various compensation and benefits programs and pays various administrative fees and premiums in connection therewith (the "**Compensation and Benefits Programs**"). The Debtors believe that the vast majority of their Employees (as defined herein) rely exclusively or primarily on the compensation and benefits they receive through the Compensation and Benefits Programs to pay their daily living expenses and support their families. Employees will face significant financial consequences if the Debtors are not permitted to pay or continue to administer the Compensation and Benefits Programs in the ordinary course of business. Further, the Debtors' failure to honor their obligations in connection with the Compensation and Benefits Programs likely would result in attrition at a time when the Debtors need their Workforce to perform at peak efficiency.

10.     Subject to the Court's approval and the terms and conditions set forth herein, the Debtors intend to continue to administer their Compensation and Benefits Programs in the ordinary course. The Debtors further request confirmation of their right to modify, change, and discontinue any of their Compensation and Benefits Programs and to implement new programs, policies, and benefits in the ordinary course of business during this Chapter 11 case, in its discretion and without the need for further Court approval, subject to applicable orders entered in this Chapter 11 case, any agreements executed in contemplation of this Chapter 11 case, and the requirements of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

11.     The Debtors estimate that, as of the Commencement Date, they owe approximately $107,553.67 in aggregate prepetition Workforce Obligations, $79,625.91 of which will become due and payable on Wednesday, September 18, 2019, prior to any final hearing on the Motion (the "**Interim Period**").

| Compensation and Benefits Program | Interim Amount |
|---|---|
| Unpaid Compensation | $80,783.74 |
| Deductions and Payroll Taxes | $ 26,769.93 |
| **Workforce Obligations** | **$ 107,553.67** |

## Debtors' Workforce Obligations

### I.    Debtors' Workforce

12.        As of the Commencement Date, the Debtors employ approximately

110 employees, consisting of approximately 70 full-time employees (the "**Full-**

**Time Employees**") and approximately 40 part-time employees (the "**Part-Time**

**Employees**", together with the Full-Time Employees, the "**Employees**").  The

Debtors pay the Employees two (2) times per month, with paychecks being

delivered on the 5th and the 20th of the month.  Direct deposit checks are paid by

ADP which requires the checks to be funded on the 3rd & 18th of the month.  Paper

checks are cut by the Debtors and delivered, as indicated above, on the 5th and the

20th  of the month.

### II.    Wages, Salaries and Other Compensation

#### A.    Unpaid Compensation

13.        The Debtors' payroll obligations generally include wages, salaries,

and payments on account of unused vacation time and other paid time off (the

"**Payroll Obligations**"). The Debtors' recent gross payroll has totaled

approximately $230,000 per month.

14.        As of the Commencement Date, the Debtors estimate they owe

approximately $107,553.67 to Employees on account of prepetition Payroll

Obligations (the "**Unpaid Compensation**"). Even with the entire first half of the

month occurring prepetition, no Employees are owed Unpaid Compensation in an amount exceeding the $12,850 cap imposed by Section 507(a)(4) of the Bankruptcy Code. For the avoidance of doubt, the Debtors do not seek authority to pay any Unpaid Compensation in excess of the statutory cap of $12,850 imposed by section 507(a)(4) of the Bankruptcy Code.

        **B.**    **Gross Pay Deductions, Governmental Withholdings, and Payroll Taxes**

15.      For each applicable pay period, the Debtors routinely deduct certain amounts from each Employee's gross payroll, including, without limitation, garnishments, child support, spousal support, service charges and similar deductions (collectively, the "**Deductions**"). The Debtors cause the Deductions to be made from Employees' paychecks, which the Debtors then remit to the appropriate third-party recipients.

16.      In addition to the Deductions, federal and state law require the Debtors to withhold amounts related to federal, state, and local income taxes, Social Security, and Medicare taxes for remittance to the appropriate federal, state, or local taxing authority (collectively, the "**Withheld Amounts**"). The Debtors must then match from their own funds for Social Security and Medicare taxes and pay, based on a percentage of gross payroll, additional amounts for federal and state unemployment insurance (collectively the "**Employer Payroll Taxes**," and together with the Withheld Amounts, the "**Payroll Taxes**"). In the aggregate, the

Debtors pay approximately $53,000 per month in Payroll Taxes, inclusive of the Employee and employer portions.  As of the Commencement Date, the Debtors owed nothing on account of prepetition Deductions and Payroll Taxes other than the amounts due from the current pay period.

17.     To the extent any of the Deductions or Payroll Taxes have not been forwarded before the Commencement Date, the Debtors seek authority to forward such Deductions and Payroll Taxes (and to continue to forward Deductions and Payroll Taxes on a postpetition basis whether or not related to the prepetition period) to the applicable third-party recipients in the ordinary course of business and consistent with past practice.

### C.     Vacation, Paid Time Off, and Employee Discounts

17.     The Debtors maintain a policy (the "**PTO Policy**") of providing paid time off to certain Employees in the form of vacation days, sick pay, personal days, holidays, bereavement pay, and payment for absences due to jury duty ("**PTO**"). Under the PTO Policy, select Employees accrue PTO. The accrual and use of PTO under the PTO Policy varies depending on, among other things, the particular type of paid time off in question.

## **The Relief Requested Should Be Granted**

### **I.    Payment of Workforce Obligations is Warranted Under Section 363(b)(1) of the Bankruptcy Code and Doctrine of Necessity.**

18.    The Court may grant the relief requested herein pursuant to Section 363 of the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under Section 363 of the Bankruptcy Code, a court may authorize a debtor to pay certain prepetition claims where a sound business purpose exists for doing so. *See In re Ionosphere Clubs, Inc*., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that there must be a sound business justification to justify payment of prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc.* (*In re James A. Phillips, Inc*.), 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 of the Bankruptcy Code to allow contractor to pay prepetition claims of suppliers).

19.    In addition, the Court has the authority, pursuant to its equitable powers under Section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because such relief is necessary for the Debtors to carry out their fiduciary duties under Section 1107(a) of the Bankruptcy Code. Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to act as a fiduciary to "'protect and preserve the estate, including an operating business'

9

going-concern value,'" on behalf of the debtor's creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232–33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the debtor became debtor in possession and, through its management…was burdened with the duties and responsibilities of a bankruptcy trustee."). Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.  11 U.S.C. § 105(a); *see Ionosphere Clubs*, 98 B.R. at 175 (applying section 105(a) to justify an order authorizing the payment of certain pre-petition wages, salaries, medical benefits, and business expense claims to debtor's employees); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims).

20.     In a long line of well-established cases, courts consistently have permitted payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g.*, *Miltenberger v. Logansport, C&S W.R. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of the

continuance of [crucial] business relations"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases), *cert. denied* 325 U.S. 873 (1945); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285–86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

21.     This "doctrine of necessity" functions in a Chapter 11 reorganization as a mechanism by which the Court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.  *See In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing "existence of a judicial power to authorize trustees…to pay claims…[for] goods or services indispensably necessary" to Debtor's continued operation); *In re Structurlite Plastics Corp.*, 86 B.R. 922, 932 (Bankr. S.D. Ohio 1988) ("[A] *per se* rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code.").  The rationale for the doctrine of necessity is consistent with the paramount goal of Chapter 11: "facilitating the continued operation and rehabilitation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176.

22.     The relief requested by this Motion represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm

11

to the Debtors' estate, and is justified under Sections 105(a) and 363(b) of the Bankruptcy Code. Authorizing the Debtors to pay prepetition wages and similar items will benefit the Debtors' estate and its creditors by allowing the Debtors' business operations to continue without interruption.  Without the relief requested herein being granted, the Debtors' Employees may seek alternative opportunities, perhaps with the Debtors' competitors. The loss of valuable Employees would deplete the Debtors' workforce, thereby hindering the Debtors' ability to meet their customer obligations and, likely, diminishing stakeholder confidence in the Debtors' ability to successfully carry out their Chapter 11 strategy.

23.      Moreover, failure to satisfy certain prepetition obligations will jeopardize Employee morale and loyalty at a time when Employee support is critical to the Debtors' business. Morale and loyalty is critical to maintain now, as the Debtors begin to increase hiring of Supplemental Workforce to assist in the increased demand during the Holiday season.

24.      Upon information and belief, the Debtors' Employees rely exclusively on their compensation, benefits, and reimbursement of expenses to satisfy their daily living expenses. These Employees will be exposed to significant financial difficulties and other distractions if the Debtors are not permitted to honor their obligations for unpaid compensation, benefits and reimbursable expenses. And, existing financial difficulties will only be exacerbated if policies such as the

expense reimbursement policy are not continued.  Additionally, as set forth above, Employee attrition would cause the Debtors to incur additional expenses to find appropriate and experienced replacements, severely disrupting the Debtors' operations at a critical juncture. Certain obligations the Debtors seeks to pay are also entitled to priority treatment under Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code and, therefore, payment at this time will not diminish the assets available for payment of general unsecured claims.

### II.  Payment of Certain of Workforce Obligations Is Required by Law.

25.    The Debtors seek authority to pay Deductions and Payroll Taxes to the appropriate entities. These amounts principally represent Employee earnings that governments, employees, and judicial authorities have designated for deduction from Employees' paychecks. Indeed, certain Deductions, including child support and alimony payments, are not property of the Debtors' estate because they have been withheld from Employees' paychecks on another party's behalf.  *See* 11 U.S.C. § 541(b). Further, federal and state laws require the Debtors and its officers to make certain tax payments that have been withheld from their Employees' paychecks. *See* 26 U.S.C. § 6672 and 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income

taxes); *DuCharmes & Co., Inc. v. State of Mich.* (*In re DuCharmes & Co.*), 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Because the Deductions and Payroll Taxes are not property of the Debtors' estate, the Debtors requests that the Court authorize them to transmit the Deductions and the Payroll Taxes to the proper parties in the ordinary course of business.

### Reservation of Rights

26.      Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or, validity of any claim against the Debtors; (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder; or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, program, policy, or lease between the Debtors and any third party under Section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

### The Debtor Has Satisfied Bankruptcy Rule 6003(b)

27.        Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a Bankruptcy Court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition. Fed. R. Bankr. P. 6003(b). The Debtors requests authority, on an interim basis, to the honor and satisfy any Workforce Obligations as they become due and payable prior to the entry of a final order, including from cash collateral. As described above, the Debtors' Employees are vital to the Debtors' operations. Failure to satisfy obligations with respect to these persons in the ordinary course of business during the first 21 days of this Chapter 11 case will jeopardize their loyalty and trust, which may cause such individuals to leave the Debtors' employ or service at a time when they are needed most. The disruption to the Debtors' business and operations would be severe and potentially irreparable. Moreover, the Debtors' Employees rely on the Debtors' compensation, and benefits to pay their living expenses and the effect could be financially ruinous if the Debtors cannot immediately pay them in the ordinary course of business. Accordingly, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003(b) is satisfied.

### Compliance with Bankruptcy Rule 6004(a)
### and Waiver of Bankruptcy Rule 6004(h)

28.     To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances, and waive the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). As explained above, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify the finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and stay apply.

### Notice

29.     Notice of this Motion will be provided to (i) the Office of the United States Trustee; (ii) the Debtors' purported secured creditors; and (iii) the holders of the twenty (20) largest unsecured claims against the Debtors. The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

30.     No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE, the Debtors respectfully requests entry of interim and final orders granting the relief requested herein and such other and further relief as is just.

STEINBERG SHAPIRO & CLARK

/s/ Mark H. Shapiro (P43134)
Attorney for Debtors
25925 Telegraph Road, Suite 203
Southfield, MI 48033
248-352-4700
shapiro@steinbergshapiro.com

Date: September 17, 2019

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

CHHATRALA GRAND RAPIDS, LLC,                    Chapter 11
                                                Case No. 19-03908
              Debtor.                           Hon. John T. Gregg
_____)

In re:

BHOGAL ENTERPRISES, LLC,                        Chapter 11
                                                Case No. 19-03909
              Debtor.                           Hon. John T. Gregg
_____)

**INTERIM ORDER GRANTING FIRST DAY MOTION OF DEBTORS
FOR ENTRY OF ORDER (I) AUTHORIZING BUT NOT DIRECTING
THE DEBTORS TO PAY CERTAIN PREPETITION WAGES,
AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**") of Chhatrala Grand Rapids, LLC and

Bhogal Enterprises, LLC, as Debtors and Debtors-in-Possession in the above-

captioned Chapter 11 cases (the "**Debtors**"), pursuant to Sections 105(a), 363 and

507 of Title 11 of the United States Code (the "**Bankruptcy Code**"), for an order

granting the Debtors (i) authority, but not direction, to pay certain prepetition

amounts, and maintain and continue to honor and pay, in its sole discretion, all

amounts with respect to the Workforce Obligations,[1] and (ii) related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the interim relief requested in the Motion having been given as provided in the Motion; such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion on an interim basis on September __, 2019 (the "**Interim Hearing**"); and upon the record of the Interim Hearing, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and the estate as contemplated by Bankruptcy Rule 6003, provides a net benefit to the Debtors and the estate after taking into account the Bankruptcy Code's priority scheme, and is in the best interests of the

---

[1] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

2

Debtors, the estate, creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted on an interim basis to the extent set forth herein.

2.      The Debtors are authorized, but not directed, pursuant to Sections 105(a), 363, and 507(a) of the Bankruptcy Code, to pay and honor all prepetition obligations associated with the Workforce Obligations and to continue programs and maintain funding in the ordinary course of business, including from cash collateral, as described in the Motion, including on account of: (a) Unpaid Compensation; (b) Deductions and Payroll Taxes; and (c) Supplemental Workforce Obligations; (each as defined herein); *provided* that, the Debtors are authorized, but not directed, to pay only amounts due and payable as of the Commencement Date and amounts that are or become due and payable between the Commencement Date and the date that a final order on the Motion is entered, unless otherwise ordered by the Court; *provided*, *further*, that, pending entry of a final order, the Debtors shall not pay or honor Unpaid Compensation, Reimbursable Expenses, or amounts due under the PTO Policy in amounts in excess of the priority amounts set forth at sections 507(a)(4) or 507(a)(5) of the Bankruptcy Code.

3.      Nothing herein restricts the Debtors' ability to modify or discontinue any benefit program to reduce or eliminate program expenses or the benefits provided thereunder, at any time, in its sole discretion without prior approval of this Court, subject to any contractual or non-bankruptcy law limitations.

4.      The Debtors and any applicable third parties are authorized to continue to allocate and distribute Deductions and Payroll Taxes to the appropriate third-party recipients or taxing authorities in accordance with the Debtors' stated policies and prepetition practices.

5.      The Debtors are further authorized, but not directed, to pay all processing and administrative fees associated with and all costs and expenses incidental to payment of the Workforce Obligations.

6.      Nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to accelerate any payments not otherwise due prior to the date of the hearing to consider entry of an order granting the relief requested in the Motion on a final basis (the "**Final Hearing**").

7.      Nothing contained in the Motion or this Interim Order or any payment made pursuant to the authority granted by this Interim Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors;  (iii)

4

a waiver of any claims or causes of action that may exist against any creditor or interest holder; or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under Section 365 of the Bankruptcy Code.

8.     Nothing in the Motion or this Interim Order, nor as a result of any payment made pursuant to this Interim Order, shall be deemed or construed as a waiver of the rights of the Debtors, or shall impair the ability of the Debtors, to contest the validity and amount of any payment made pursuant to this Interim Order.

9.     Notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

10.     The requirements of Bankruptcy Rule 6003(b) have been satisfied.

11.     Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

12.     Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

13.     This Interim Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis; *provided* that, the Court's

ultimate disposition of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Interim Order.

14.    The Debtors are authorized to take all action necessary to effectuate the relief granted in this Interim Order.

15.    The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Interim Order.

16.    The Final Hearing on the Motion shall be held on _____, **2019, at _____ (EST)**, and any objections or responses to the Motion shall be in writing, filed with the Court, and served upon (i) the Office of the United States Trustee; and (ii)  counsel for the Debtor-in-Possession, Steinberg Shapiro & Clark, so as to be received no later than **4:00 p.m. (EST) on _____, 2019**.