## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MICHIGAN

In re:

**CHHATRALA GRAND RAPIDS, LLC[1],**

       **Debtors.**

_____)

       **Chapter 11**
       **Case No. 19- 03908**
       **Hon. John T. Gregg**
       **(Jointly Administered)**

## FOURTH AMENDED
## DEBTORS' JOINT PLAN OF LIQUIDATION

Prepared By:

STEINBERG SHAPIRO & CLARK
Mark H. Shapiro (P43134)
Attorney for Debtor
25925 Telegraph Road, Suite 203
Southfield, MI 48033
248-352-4700
shapiro@steinbergshapiro.com

Robert N. Bassel (P 48420)
Attorney for Debtor
P.O. Box T
Clinton, MI 49236
(248) 677-1234
bbassel@gmail.com

---

[1] The Debtors in these jointly administered proceedings are: Chhatrala Grand Rapids, LLC, and Bhogal Enterprises, LLC, Case No. 19-3909-jtg

**CHHATRALA GRAND RAPIDS, LLC** and **BHOGAL ENTERPRISES, LLC (**the "Debtors") hereby propose this Plan for the resolution of the Claims against, and Interests in, the Debtors, pursuant to, inter alia, Chapter 11 of the Bankruptcy Code and Rule 3016 of the Bankruptcy Rules.

THE DISCLOSURE STATEMENT FILED AND SERVED CONCURRENTLY HEREWITH HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT ON A FINAL BASIS UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE AS CONTAINING ADEQUATE INFORMATION IN CONNECTION WITH THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN DESCRIBED HEREIN. THE FILING AND DISSEMINATION OF THE PROPOSED DISCLOSURE STATEMENT AND PLAN SHOULD NOT BE CONSTRUED AS FINAL APPROVAL OF THE DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT.

## ARTICLE 1
## DEFINITIONS AND GENERAL PROVISIONS

**1.1    Definitions**. Any term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed therein for such term. Otherwise, the following terms used in this Plan shall have the meanings set forth below:

1.      "*Administrative Expense Claim*" means a Claim arising prior to the Effective Date for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including but not necessarily limited to, section 503(b)(9) Claims and Professional Fee Claims.

2.      "*Affiliate*" shall mean, with respect to any Person, any direct or indirect subsidiary of such Person, and any other Person that directly, or through one or more intermediaries, controls or is controlled by or is under common control with such first Person.

3.      "*Allowed*" means all or that portion, as applicable, of any Claim against any of the Debtors or any Interests of the Debtors (i) that has been listed by the Debtors in the Schedules, as such Schedules may be amended by the Debtors from time to time, as liquidated in amount and not disputed or contingent, and for which no contrary or superseding Proof of Claim has been filed, (ii) that is liquidated, noncontingent and evidenced by a Proof of Claim (or Proof of Interest) which has been timely filed prior to any deadline established by the Bar Date Order and as to which no objection has been interposed or filed by the Claims Objection Deadline, or (iii) that has been expressly allowed by a Final Order of the Bankruptcy court, pursuant to the

2

claims settlement procedures set forth in Article 8 of this Plan, or otherwise pursuant to the terms of this Plan.

4.    "*Allowed    Claim*" means a Claim of the particular type specified that is an Allowed Claim. For example, an Allowed Priority Tax Claim is a Priority Tax Claim that is also an Allowed Claim.

5.    "APA" means the "Asset Purchase Agreement" between the Debtors and Buyer for the sale of the Assets to the Buyer, as such agreement may be modified from time to time, a copy of which will be filed within 2 days of its execution, and which will be consistent with the Letter of Intent which is attached to the Disclosure Statement as an exhibit_ the terms of which shall be incorporated herein.  To the extent of any inconsistency between the APA and the LOI, the APA shall control.

6.    "*Assets*" means the assets of the Debtors described in the APA to be sold and transferred to Buyer pursuant to the APA.

7.    "*Assignment Effective Date*" has the meaning given to such term in this Plan and generally means the date that the assumption and assignment of an Executory Contract or Unexpired Lease becomes effective.

8.    "*Assumption Notice*" means the notice filed with the Bankruptcy Court by the Debtors and served upon contract counterparties for the purpose of notifying such counterparties of specific Executory Contracts and Unexpired Leases being assumed by the Debtors and assigned to the Buyer.

9.    "*Avoidance Action*" means any claim or cause of action of the Debtors' Estates arising out of or maintainable pursuant to Chapter 5 of the Bankruptcy Code, including sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

10.    "*Ballot*" means the form of ballot for sending to Holders of Allowed Claims entitled to vote on the Plan for soliciting their acceptance or rejection of the Plan.

11.    "*Bankruptcy Case*" means the jointly administered chapter 11 case initiated by the Debtors' filing on the Petition Date of a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

12.    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*.

13.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the Western District of Michigan.

14.    *"Bankruptcy Rules'"* means, collectively, the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules as promulgated in the Western District of Michigan.

15.    "*Bar Date Order'"* means both the order entered by the Bankruptcy Court [Docket No. 195] establishing March 20, 2020 as the general deadline for filing Claims against the Debtors by any entity.

16.    "*Bar Date(s)""* means the dates established by the Bar Date Order for filing Claims against the Debtors.

17.    "*Business Day""* means any day other than a Saturday, Sunday or a legal holiday on which the commercial banks are closed for business in Grand Rapids, Michigan.

18.    *"Buyer"* means Access Point Financial, LLC or its designee, the buyer under the APA.

19.    *"Cash"* means legal tender of the United States of America and equivalents thereof.

20.    *"Causes of Action"* means all Avoidance Actions and any of the Debtors' claims actions, suits, accounts, agreements, promises, rights to payment and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise.

21.    *"Chapter* 11" means chapter 11 of the Bankruptcy Code.

22.    "*Charge*" shall have the meaning set forth in the Plan.

23.    *"Claim"* means a claim against any of the Debtors whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

24.    *"Classes"* means a category of Claims or Interests described in this Plan.

25.    "*Closing*" means the closing of the sale to Buyer as described and contemplated by the APA.

26.    *"Closing Date"* means the date the Closing occurs.

27.    *"Confirmation Date"* means the date on which the Bankruptcy Court enters the Confirmation Order.

28.    *"Confirmation Hearing"* means the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters under section 1128 of the Bankruptcy Code, as such hearing may be continued.

29.    "*Confirmation Order*" means the order entered by the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, and approving the Sale, which shall be in all respects reasonably acceptable to the Debtors and Buyer.

30.    "*Cure Costs*" means the amount of Cash to be paid by the Buyer as may be agreed upon by the relevant Debtor, the counterparty, and the Buyer,  or ordered by the Bankruptcy Court, for the purpose of curing any monetary defaults or contractual obligations owed by the Debtors under any Executory Contract or Unexpired Lease with respect to the assumption of such Executory Contract or Unexpired Lease pursuant to section 365(b) of the Bankruptcy Code.

31.    "*Debtors*" means collectively **CHHATRALA GRAND RAPIDS, LLC and BHOGAL ENTERPRISES, LLC**, the debtors in this Bankruptcy Case.

32.    "*Designation Period*" shall have the meaning given to such term in the APA and generally refers to the limited time period after the Closing Date during which the Buyer may designate additional Executory Contracts and Unexpired Leases to be assumed by the Debtors and assigned to the Buyer, or alternatively, to be designated as an Excluded Asset.

33.    "*Directors and Officers*" shall mean each and every of the Debtors' past and present officers, directors, shareholders, members, managers, partners and principals, and each of their respective affiliates, agents, employees, successors and predecessors-in-interest, advisors, accountants, attorneys, representatives and assigns.

34.    "*Disallowed Claim*" means a Claim or any portion thereof that (i) has been disallowed by a Final Order, (ii) is listed in any of the Debtors' Schedules at zero or as contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court, or (iii) is not listed in the Debtors' schedules and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court.

35.    "*Disclosure Statement*" means the "Disclosure Statement for Joint Plan of Liquidation Proposed by Debtors" filed in connection with this Plan.

36.    "*Disputed Claim*" means, with reference to any Claim, a Claim or any portion thereof, that is the subject of an objection timely filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court.

37.    "*Distribution*" means any distribution by the Debtors or the Liquidating

Trustee to a Holder of an Allowed Claim.

38.     *"District Court"* means the United States District Court for the Western District of Michigan.

39.     *"Effective Date"* means 90 Days after all of the conditions specified in this Plan have been satisfied or waived by the Debtors (to the extent such conditions are subject to waiver).

40.     *"Estate"* means, collectively, each estate that was created by the commencement of the Debtors' Bankruptcy Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges of such Debtors and any and all interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that such Debtors or such estate shall have had as of the commencement of the Bankruptcy Case, or which such Estate acquired after the commencement of the Bankruptcy Case, whether by virtue of sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise.

41.     *"Excluded Assets"* shall have the meaning to be given to such term in the APA and generally refers to all of the Debtors' property that is excluded from the sale and transfer to the Buyer.

42.     "*Executory Contract or Unexpired Lease*" means all executory contracts or unexpired leases to which any of the Debtors is a party.

43.     *"Final Decree"* means a final decree entered by the Bankruptcy Court after the Effective Date pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

44.     *"Final Order"* means an order of the Bankruptcy Court or any other court as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no appeal has been filed timely.

45.     *"Holder"* means a Holder of a Claim or Interest, as applicable.

46.     *"Impaired"* shall have the meaning ascribed thereto in section 1124 of the Bankruptcy Code.

47.     "*Interests*" means all equity securities, membership interests, or other ownership interests in any of the Debtors.

48.     "License Agreement" means that certain Crowne Plaza Change of Ownership License Agreement dated October 10, 2017 (as may have been amended, the "License Agreement") between Holiday Hospitality Franchising, LLC ("HHF"), as licensor, and Chhatrala Grand Rapids, LLC ("Chhatrala"), as

licensee, which authorizes Chhatrala to operate as the Crowne Plaza Grand Rapids.

49.     *"Lien"* has the meaning set forth in section 101(37) of the Bankruptcy Code.

50.     "LOI" means the "Letter of Intent" between the Debtors and Buyer for the sale of the Assets to the Buyer, as such document may be modified from time to time,  is attached to the Disclosure Statement as an exhibit.

51.     *"Liquidating Trustee"* shall have the meaning set forth in this Plan .

52.     *"Order"* shall mean any writ, judgment, decree, injunction or similar order, writ, ruling, directive or other requirement of any governmental entity (in each case whether preliminary or final).

53.     *"Person"* means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

54.     *"Petition Date"* means September 16, 2019.

55.     *"Plan"* means this plan of liquidation as the same may hereafter be amended, supplemented, restated, or modified.

56.     *"Plan Supplement"* means any supplement to the Plan that may be filed with the Bankruptcy Court prior to the Confirmation Hearing.

57.     "*Post-Closing Business*" shall mean the business as operated by the Buyer after Closing.

58.     "*Priority Non-Tax Claim*" means a Claim entitled to priority under section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim, a Priority Tax Claim.

59.     "*Priority Tax Claim*" means a Claim against the Debtors that is of a kind specified in sections 507(a)(8) of the Bankruptcy Code.

60.     "*Professional Fee Claim*" means an Allowed Administrative Claim of a professional retained under section 327 of the Bankruptcy Code for compensation for services rendered or reimbursement of costs, expenses or other charges and disbursements incurred during the period from the Petition Date through the date that the case is closed.

61.     "*Record Date*" means the date for determining the identity of Holders of Allowed Claims entitled to Distributions under this Plan. If no other date is established as the Record Date in the Confirmation Order, then the Record

Date shall be the Confirmation Date.

62. *"Record Holder"* means the Holder of a Claim as of the Record Date.

63. *"Reinstatement or Reinstated"* means leaving unaltered the legal, equitable, and contractual rights which a Claim entitles the Holder of such Claim so as to leave such Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

64. *"Rejection Effective Date"* has the meaning given to such term at Section 5.2(c) of this Plan and generally means the date that the rejection of an Executory Contract or Unexpired Lease becomes effective.

65. *"Rejection Notice"* means the notice filed with the Bankruptcy Court by the Debtors and served upon contract counterparties for the purpose of notifying such counterparties of their specific Executory Contracts and Unexpired Leases being rejected by the Debtors.

66. omitted

67. *"Sale"* means the sale and transfer of the Debtors' Assets (but excluding the Excluded Assets) to Buyer as set forth in, and contemplated by the APA.

68. *"Schedules'"* means the Schedules of Assets and Liabilities the Debtors filed in the Bankruptcy Case, as such schedules may be amended from time to time.

69. *"Secured Claim"* means a Claim against the Debtors to the extent secured by a Lien on any property of the Debtors and to the extent of the value of said property as provided in section 506(a) of the Bankruptcy Code.

70. *"Secured Tax Claim"* means a Claim of a governmental unit for the payment of a tax assessed against property of the Debtors' Estate(s) that is secured by a first priority Lien on such property of the Estate(s).

71. *"Senior Lender"* means Access Point Financial, LLC, and any of its successors or assigns.

72. Omitted

73. *"Transferred Assets"* means the property of the Debtors sold and transferred to the Buyer pursuant to the APA, and such Transferred Assets are generally described as the "Assets" that shall be defined in the APA.

74. *"Transferred Inventory"* means all inventories and merchandise in the possession of the Debtors as of the Closing Date that are Transferred Assets.

75. *"Unencumbered Settlement Cash"* means the sum of $25,000 to be

transferred by the Buyer to the Estate, free and clear of liens and claims of any person or entity, for the benefit of general unsecured creditors.

76.     *"Unimpaired"* means, with respect to a Class of Claims or Interests, any Class that is not Impaired.

77.     *"Unsecured Claim"* means any Claim against the Debtors that is not secured by any Lien upon property of the Debtors' Estates and that is not a Secured Claim, a Priority Non-Tax Claim, a Priority Tax Claim, or an Administrative Expense Claim.

78.     *"Wind Down Expenses"* shall have the meaning given to such term in the APA and generally refers to the costs and expenses of winding down the Debtors' affairs and Bankruptcy Case after the Closing of the Sale to the Buyer.

**1.2**     **Time**. Except as otherwise provided in this Plan, the provisions of Bankruptcy Rule 9006 shall apply in computing any period of time prescribed or allowed by the Plan. Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the United States of America, then the time for the occurrence or happening of said event shall be extended to the following next day which is not a Saturday, Sunday, or legal holiday.

**1.3**     **Rules of Construction**. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan, unless superseded herein. All references to "the Plan" herein shall be construed, where applicable, to include references to this document and all its exhibits, appendices, schedules and annexes, if any. The captions and headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Any term used in the Plan that is not defined in the Plan, either in Article I hereof or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules. To the extent of any discrepancy between the Plan and the APA, the APA shall govern and control, including with respect to any defined terms contained in the APA and incorporated by reference or usage in the Plan, except that with respect to the License Agreement, the Plan shall control.. References in this Plan to the "Debtors" may be interpreted to mean the "Liquidating Trustee," and vice versa, where the context or circumstances otherwise require or reasonably suggest such interpretation.

## ARTICLE 2

## TREATMENT OF NON-CLASSIFIED CLAIMS

Pursuant to section 1123(a)(1) and 1129(a)(9) of the Bankruptcy Code, Holders of Priority Tax Claims and Administrative Expense Claims against the Debtors are not classified for purposes of voting on this Plan.

**2.1**    **Priority Tax Claims**.

(a)    Allowed Priority Tax Claims will be paid in accordance with either of the following treatments selected by the Buyer and Debtors in their discretion: (1) in Cash for the full, unpaid amount on the Effective Date, or as soon thereafter as is reasonably practicable, (2) or in accordance with such other less favorable treatment to which the Debtors and the Holder of such Allowed Priority Tax Claim shall have agreed upon in writing.  Proofs of claim for priority taxes in the following amounts have been asserted by the following taxing authorities:

| | |
|---|---|
| Internal Revenue Service | $103,951.97 |
| Michigan Department of Treasury | $43,923.52 |
| | |

(b)    As with any claims, parties in interest reserve the ability to object to the allowance of the claims filed by the Internal Revenue Service and the State of Michigan.

**2.2**    **Administrative Expense Claims**.

(a)    <u>Administrative Expense Claim Bar Date</u>. Holders of an Administrative Expense Claim must file a motion in the Bankruptcy Case seeking the allowance of any Administrative Expense Claim which has not been paid within 60 days after the Confirmation Date, unless such Holder previously filed such a request and the request remains pending or was allowed by a prior Order of the Bankruptcy Court. **Failure to file timely and serve the required motion or notice by the applicable deadline(s) noted above shall result in the Administrative Expense Claim being forever barred and discharged without payment.**

(b)    All final requests for payment of Professional Fee Claims must be filed with the Bankruptcy Court pursuant to customary final fee applications within 60 days after the Effective Date. The Allowed amounts of any Professional Fee Claims shall be determined by the Bankruptcy Court following any hearing that may be scheduled by the Bankruptcy Court. If no objections are timely filed to any final fee application, the Bankruptcy Court may approve such fee applications without a hearing.

(c)    On or before the later of the Effective Date or the date that the Administrative Expense Claim is allowed, the Holder of an Allowed Administrative Expense Claim shall receive (i) Cash, equal to the unpaid portion of such Allowed Administrative Expense Claim, or (ii) such other less favorable treatment as to which

the Holder of the Allowed Administrative Expense Claim and the Debtors shall have agreed upon in writing.

(d) Notwithstanding anything hereto, payment of post-petition franchise fees to HHF shall continue to be paid in the ordinary course. HHF is not required to file a request for payment of administrative expenses, and the requirement for Debtors to make all such payments in the ordinary course is incorporated into the Plan by this provision.

(e) For purposes of clarification, any fees incurred pursuant to 28 U.S.C. § 1930(a)(6) are not subject to any administrative expense bar date, whether in this Plan or otherwise.

# ARTICLE 3

## CLASSIFICATION AND TREATMENT OF CLAIMS

**3.1 Classes of Claims and Interests**. The categories set forth below classify all Claims and Interests. A Claim or Interest shall be deemed classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class, except as set forth in a specific class. The treatment with respect to each Class of Claims and Interests provided for in this Plan shall be in full and complete satisfaction, release and discharge of such Claims and Interests.

| Class | Description | Status | Entitled to Vote |
|-------|-------------|--------|------------------|
| 1 | Priority Non-Tax Claims | Unimpaired | No |
| 2 | Senior Lender Secured Claims | Impaired | Yes |
| 3 | Secured Tax Claims | Unimpaired | No |
| 4 | Ascentium Secured Claim | Unimpaired | No |
| 5 | The Huntington National Bank Secured Claim | Unimpaired | No |
| 6 | Unsecured Claims | Impaired | Yes |
| 7 | Equity Interests | Impaired | Yes |

**3.2    Class 1: Priority Non-Tax Claims**.

(a)    Class Description. Class 1 consists of all Priority Non-Tax Claims, which include but are not necessarily limited to the following Claims to the extent they are entitled to priority under 11 U.S.C. § 507: Claims relating to unpaid employee wages, salaries or commissions, and Claims relating to contributions to an

employee benefit plan.  Debtors do not believe that any such Claims exist.

(b)    Treatment. Unless a different treatment is agreed upon by the parties that does not conflict with this Plan or the Bankruptcy Code, each Allowed Priority Non-Tax Claim shall be Unimpaired under the Plan, and, pursuant to section 1124 of the Bankruptcy Code, all of the legal, equitable and contractual rights to which such Claim entitles the Holder in respect of such Claim shall be fully reinstated and retained, and such Allowed Priority Non-Tax Claim (including any amounts to which such Holder is entitled pursuant to section 1124(2) of the Bankruptcy Code) shall be paid in full in accordance with such reinstated rights on the Effective Date or as soon as practically possible thereafter.

(c)    Impairment and Voting. Class 1 Claims are Unimpaired and are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Class 1 Claims are not entitled to vote to accept or reject the Plan, and the votes of such Claims shall not be solicited.

### 3.3    Class 2: Debtor's Release as to Senior Lender Secured Claims.

(a)    Class Description. Class 2 consists of the Allowed Secured Claim of the Senior Lender Access Point Financial, LLC with respect to its secured claims in the total amount of $15,731,519.65 based upon the amount owing on the real estate loan of $10,719,769.64 plus the amount owing on the personal property loan of $5,011,750.01 pursuant to Access Point's filed proofs of claim.

(b)    Treatment. Senior Lender shall utilize $11,000,000 of its Senior Lender Secured Claim as a credit bid to purchase the Assets pursuant to the APA. Accordingly, unless a different treatment is agreed upon by the parties that does not conflict with this Plan or the Bankruptcy Code, upon the Closing of the Sale, obligations in the amount of $11,000,000 of the Senior Lender Secured Claim shall be an Allowed Secured Claim and satisfied in full by the Buyer pursuant to the terms of the APA. The balance of the Senior Lender Claims shall be treated as an Allowed Unsecured Claim in Class 6 in the amount of approximately $4,731,519.65 for voting purposes only, and any Class 6 distribution that would be made on account of the Allowed Class 6 Claim of the Senior Lender is waived.  This waiver is provided for the sole purpose of allowing other unsecured creditors a larger distribution.  Such action is not an admission or compromise by the Senior Lender.

(c)    Release of Senior Lender.  Upon the Effective Date, each of the Debtors, any Person acting by or through them including the proposed Liquidating Trustee, on behalf of the Debtors, and Surinder and Bhavneet Bhogal, or any Person acting by or through them, hereby forever and unconditionally releases Senior Lender and each of the foregoing's respective past and present affiliates, divisions and subsidiaries, each of the foregoing's respective past and present officers, directors, employees, shareholders, managers, attorneys, agents, advisors and representatives, each of the foregoing's respective participants, successors and assigns, including,

without limitation, and all past and present officers, directors, employees, shareholders, managers and attorneys from any and all claims, obligations, rights, omissions causes of action, costs, expenses and liabilities, of whatever kind or nature, whether direct or indirect, contingent or absolute, suspected or unsuspected, material or unmaterial, known or unknown, whether foreseen or unforeseen, arising on or before the Effective Date, which such Debtors or any of its members, shareholders, directors, officers, affiliates, or guarantors ever had, now have or hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever, which are based upon, arise under or in connection with, or are related to in any way, to the Senior Lender loans as to any of the Debtors, or the Bankruptcy Case in any manner whatsoever.  Notwithstanding anything to the contrary in the Plan, Surinder and Bhavneet Bhogal shall not be released from any claims by operation of confirmation of the Debtor's Plan, as amended.

(d)    Shiva Management, Inc.  Shiva maintains it has a direct claim against Senior Lender Access Point Financial, LLC.  Debtors and Access Point dispute any direct claim Shiva asserts.  However, nothing in the Plan or Confirmation Order shall operate as a release of any direct claim Shiva may assert against Access Point.

(e)    Impairment and Voting. The Class 2 Claim is Impaired and the Senior Lender is entitled to vote to accept or reject the Plan.

### 3.4    Class 3: Secured Tax Claims.

(a)    Class Description. Class 3 consists of Allowed Secured Tax Claims for the following entities in the following amounts:

| | |
|---|---|
| Cascade Charter Township personal property tax | 76,601.62 |
| Cascade Charter Township real estate tax | 125,967.67 |
| Kent County real estate tax | 23,827.97 |
| Total | 226,397.26 |

(b)    Treatment. At Closing, the Holder of such Allowed Secured Tax Claim shall receive (i) Cash equal to the value of its Allowed Secured Tax Claim at

13

the time, or (ii) such other less favorable treatment as to which the Debtors, the Buyer and such Holder shall have agreed upon in writing. Any Holder of an Allowed Secured Tax Claim shall retain its Lien in the collateral securing such Claim (or the proceeds thereof to the extent sold by the Debtors free and clear of such Lien) to the same extent and with the same priority as such Lien held as of the Petition Date until such time as (A) the Holder of such Allowed Secured Tax Claim has received the treatment described above or (B) such purported Lien has been determined by an order of the Bankruptcy Court to be invalid or otherwise avoidable.

(c)     <u>Impairment and Voting</u>. The Class 5 Claims are Unimpaired as they are being satisfied in full, and the holders thereof are not entitled to vote to accept or reject the Plan. The votes of such Claims shall not be solicited.

### 3.5    <u>Class 4: Ascentium Capital Secured Claim</u>.

(a)     <u>Class Description</u>. Class 4 consists of the Secured Claim of Ascentium Capital which has a purchase money security interest in Chattrala's point of sale system in the amount of its filed proof of claim of $10,890.73. Debtors believe the value of the collateral to be equal to the value of the amount claimed.

(b)     <u>Treatment</u>. Unless a different treatment is agreed upon by the parties in writing that does not conflict with this Plan or the Bankruptcy Code, Ascentium Capital shall be either (i) paid at Closing the total amount of its Secured Claim, or (ii) Debtors shall return the collateral to Ascentium Capital in full satisfaction of its claims.

(c)<u>Impairment and Voting</u>. The Class 4 Claim is unimpaired as it is being satisfied in full, and the holders thereof are not entitled to vote to accept or reject the Plan.

### 3.6    **Class 5: The Huntington National Bank Secured Claim**.

(a)     <u>Class Description</u>. Class 5 consists of the Secured Claim of The Huntington National Bank which has a security interest in Chattrala's 2017 Ford Transit Van in the amount of $14,732.44.   Debtors believe that the value of the <u>collateral is equal to what is owed.</u>

(<u>b</u>)     <u>Treatment</u>. Unless a different treatment is agreed upon by the parties in writing that does not conflict with this Plan or the Bankruptcy Code, The Huntington National Bank shall be (i) paid at Closing the total amount of its Secured Claim, or (ii) Debtors shall return The Huntington National Bank's collateral in full satisfaction of its claims.

(c)     <u>Impairment and Voting</u>. The Class 5 Claim is unimpaired as it is being satisfied in full, and the holders thereof are not entitled to vote to accept or reject the Plan.

**3.7    Class 6: Unsecured Claims.**

(a)    <u>Class Description</u>. Class 6 consists of all Allowed Unsecured Claims.

(b)    <u>Treatment.</u> Unless a different treatment is agreed upon by the parties that does not conflict with this Plan or the Bankruptcy Code, each Holder of an Allowed Unsecured Claim will receive a Pro Rata share of Distributions available from the Unencumbered Settlement Cash and any other Assets (following liquidation into Cash) that remain property of the Debtors' Estates after the Closing Date of the Sale, subject to the priorities set forth in this Plan and the Bankruptcy Code.

(c)    <u>Impairment and Voting</u>. Class 6 Claims are Impaired and are entitled to vote to accept or reject the Plan. Any net proceeds of avoidance action recoveries shall be distributed pursuant to the Bankruptcy Code priorities for avoidance action recoveries, and thus claimants in this class may receive money from the Liquidating Trustee if he is successful in pursuing avoidance actions. For purposes of clarification, the claims of Shiva Management, LLC and any of its assigns shall be treated as a general unsecured claim per 11 U.S.C. Section 506. Pursuant to the Plan, including sections 6.1 (a) and (b), the Sale shall be free and clear of all liens other than Permitted Liens, in any event.

**3.8    Class 7: Equity Interests.**

(a)    <u>Class Description</u>. Class 7 consists of all Allowed Interests in the Debtors.

(b)    <u>Treatment.</u> All Interests in the Debtors shall be extinguished and terminated and the Holders of such Interests shall not receive or retain anything on account of such interests.

(c)    <u>Impairment and Voting</u>. Class 7 Interests are Impaired and are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Class 7 Interests are not entitled to vote to accept or reject the Plan.

**3.9    Reservation**. Nothing herein shall constitute an admission as to the nature, validity, or amount of the Claims or interests in each of the Classes designated in this Plan. The Debtors and all parties in interest reserve the right to object to any and all Claims and Interests.

# ARTICLE 4

## ACCEPTANCE OR REJECTION OF PLAN

**4.1 Impaired Classes Entitled to Vote**. Classes 2, 6 and 7 are Impaired and are entitled to vote to accept or reject the Plan. Because the Interests in Class 7 are being cancelled, however, the Interest Holders are deemed to have not accepted their proposed treatment under the Plan per section 1126(g) of the

Bankruptcy Code, and are not entitled to vote although they are being Impaired

(a) <u>Acceptance by an Impaired Class</u>. Pursuant to section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if: (a) the Holders of at least two-thirds (2/3) in dollar amount of the Allowed Claims actually voting in such Class (other than Claims held by any Holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan, <u>and</u> (b) more than one-half (1/2) in number of the Holders of such Allowed Claims actually voting in such Class (other than Claims held by any Holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan..

**4.2    <u>Unimpaired Classes Presumed to Accept Plan</u>**. Classes 1, 3, 4 and 5 are Unimpaired under the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, such Classes are conclusively presumed to have accepted the Plan.

**4.3    <u>Estimation of Claims for Voting Purposes</u>**. The Debtors may at any time request the Bankruptcy Court to estimate any contingent, unliquidated or disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason or purpose, including for purposes of voting on the Plan.

**4.4    <u>Designation of Votes</u>**. The Debtors reserve all of their rights under section 1126(e) of the Bankruptcy Code to request the Court to designate any vote to accept or reject the Plan that was not made in good faith.

**4.5    <u>Cramdown</u>** If all applicable requirements for Confirmation of the Plan are met as set forth in section 1129(a)(1) through (13) of the Bankruptcy Code except subsection (8) thereof, the Debtors hereby request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code on the bases that the Plan is fair and equitable, and does not discriminate unfairly with respect to each Class of Claims or Interests that is Impaired under, and has not accepted, the Plan.

# ARTICLE 5
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**5.1    <u>General Information</u>**. Attached as <u>Exhibit "C"</u> to the Disclosure Statement is a list of the Debtors' Executory Contracts and Unexpired Leases, along with the Debtors' calculation of the Cure Costs corresponding to such contracts and leases. The Debtors' assumption and assignment and/or rejection of such contracts and leases shall be determined and governed generally by the APA, which shall be referred to in the APA as the "Assumed Contracts" and the "Assumed Real Property Leases" respectively. It is contemplated the Debtor will assume and assign many if not most of such contracts and leases, and that it will designate the treatment of most of such contracts and leases as of the Closing Date of the Sale. However, for a limited period of time after the Closing Date not to exceed 60 days (i.e., the Designation Period), the Buyer shall have the ability to designate contracts or leases to be

assumed or rejected if such contracts or leases were not already designated as such as of the Closing Date. The process for the assumption and assignment or rejection of such designated contracts or leases shall be set forth in the APA and the Confirmation Order approving the APA. The Debtors intend to reject all Executory Contracts and Unexpired Leases that are not designated to be assumed and assigned to Buyer as part of the Sale. Pursuant to the procedures described in Section 5.2 below, counterparties to such contracts and leases will be notified as to which contracts and leases are designated to be assumed or rejected by the Debtors' filing of "Assumption Notice(s)" or "Rejection Notice(s)" with the Bankruptcy Court and serving such notices on the counterparties to such contract and leases.

For purposes of clarification, the License Agreement with HHF is not being transferred as part of the sale. The License Agreement and all rights thereto, including Chhtrala's rights to use HHF's marks and system, is a nonassignable asset that is not being sold or acquired through the sale. The License Agreement will be rejected and terminated as of 11:59 p.m. on the earlier of the Closing Date or the Effective Date.  In order to operate as a Crowne Plaza® Hotel after the sale, Access Point will need to apply to enter into a new license agreement with HHF or one of its affiliates, which may or may not be approved in accordance with HHF's processes and procedures.  Access Point is in the process of applying for a new license agreement. The Marshall Hotels management agreement, has been assumed pursuant to the Court's Order Granting Debtors' Motion for Assumption of Executory Contract with Marshall Hotels & Resorts, Inc.  (Docket No. 169).

### 5.2    **Treatment of Executory Contracts and Unexpired Leases**.

(a)    Assumption and Assignment. The Debtors shall assume and assign to Buyer all of the Debtors' Executory Contracts and Unexpired Leases that are designated by the Buyer as Assumed Contracts and Assumed Real Property Leases pursuant to the APA. The License Agreement shall not be included within Assumed Contracts.

(b)    Cure Costs / Adequate Assurance. The Buyer shall pay and perform the Cure Costs needed to assume and assign the corresponding Assumed Contracts and Assumed Real Property Leases. If for any particular contract or lease there is an unresolved dispute as of the Effective Date pertaining to (i) the amount or nature of the Cure Costs, (ii) the Buyer's ability to provide "adequate assurance of future performance" under section 365, or (iii) any other matter pertaining to assumption and assignment, then the Cure Costs shall be paid within ten (10) days following the entry of a Final Order by the Bankruptcy Court resolving the dispute and approving the assumption and assignment to Buyer; provided, however, that the Debtors, with the Buyer's approval, shall be authorized to reject any contract or lease to the extent the amount of the Cure Costs determined by such Final Order or any other issue renders the assumption and assignment of such contract or lease

unfavorable to the Buyer in its sole judgment, even if such rejection occurs after a prior indication of assumption. Any dispute regarding Cure Costs or other issues regarding assumption and assignment may be resolved consensually by the parties without a hearing or order from the Bankruptcy Court by the filing of a written stipulation by the parties with the Bankruptcy Court; provided nothing shall prohibit the Bankruptcy Court from also entering a consent order resolving the dispute, without a hearing, if it is desired or submitted by the parties. **Any objection to the proposed Cure Cost amounts listed on the Cure Cost Schedule (the "Cure Objection"), which shall be a Schedule to the APA when it is filed, must be filed with the Bankruptcy Court no later than the latter of these following dates; (1) ten days after the filing and service of the Cure Cost Schedule or (2) the deadline for objecting to the confirmation of the Plan. If no timely Cure Objection is filed, the Cure Costs listed in the Cure Cost Schedule will be the only amounts necessary under section 365(b) of the Bankruptcy Code to cure the monetary defaults under the contracts and leases set forth in the Cure Cost Schedule. If a Cure Objection or other objection to the assumption and assignment was previously filed in the Bankruptcy Case prior to the date of this Plan by a Person, such Person is not required to re-file such objection.**

(c)    <u>Rejection of Executory Contracts and Unexpired Leases</u>. The Debtors shall reject all of the Debtors' Executory Contracts and Unexpired Leases that are not designated by the Buyer as Assumed Contracts and Assumed Real Property Leases pursuant to the APA. The effective date for the rejection of any particular contracts or leases shall be determined by the Confirmation Order. The Confirmation Order shall provide that the rejection and termination of the License Agreement shall be 11:59 p.m. on the earlier of the Closing Date or the Effective Date.

(d)    <u>Abandonment of Property</u>. To the extent the Debtors' interest in any personal property has little or no value, or if the preservation of such property would be burdensome to the estate, the Debtors or Liquidating Trustee shall be authorized to abandon such property without the need for any court order or hearing, effective as of the Effective Date, by providing written notice of such abandonment in the Rejection Notice or otherwise, with such abandonment taking effect on the date such abandonment notice is filed with the Bankruptcy Court. Any disputes or objections to such abandonment shall be resolved by the Bankruptcy Court.

(e)    <u>Bar Date for Rejection Damages Claims</u>.  Under the Court's ORDER ESTABLISHING BAR DATE FOR FILING PROOFS OF CLAIM AND INTEREST (Docket No. 195), any entity whose claim arises out of the rejection of an executory contract or unexpired lease under 11 U.S.C. § 365 must file a proof of claim within thirty (30) days of service of the order providing for the rejection of the executory contract or unexpired lease (the "Rejection Bar Date")." Any Claim not filed within such time period shall be forever barred. The Debtors and the Liquidating Trustee and all parties in interest shall have the right to object to any Claim arising out of the rejection of an executory contract or unexpired lease. Notwithstanding the

foregoing, HHF shall have thirty (30) days from the later of the Closing Date or Effective Date to file any rejection damages Claim based upon the rejection and termination of the License Agreement.

(f)    Treatment of Rejection Claims. Claims arising out of the rejection of executory contracts and unexpired leases shall, pursuant to section 502(g) of the Bankruptcy Code, be Impaired and treated as Class 6 Unsecured Claims.

# ARTICLE 6

# MEANS FOR THE IMPLEMENTATION OF THE PLAN

**6.1 The Sale**. The means for the implementation of the Plan shall be provided through the Closing of the Sale to the Buyer. The entry of the Confirmation Order shall constitute (a) approval of the APA, and (b) authorization for the Debtors to take all steps reasonably necessary to consummate the APA in order to implement the Plan.

(a)    Sale Free and Clear. Pursuant to section 363(f) and sections 1123(a)(5)(D), (b)(4) and (b)(6) of the Bankruptcy Code, the entry of the Confirmation Order shall constitute approval for the sale and transfer of the Assets to Buyer free and clear of all Liens, Claims, interests and encumbrances, except for any Permitted Liens (as shall be defined in the APA).

(b)    The Confirmation Order (a) is and shall be effective as a determination that all interests and claims of any kind or nature whatsoever existing as to the Assets have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected; and (b) shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of its  office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Assets.

(c)    Exemption from Transfer Taxes. Pursuant to section 1146(a of the Bankruptcy Code, any transfers from the Debtors to the Buyer or to any other Person or Entity pursuant to this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment. The Confirmation Order shall direct the appropriate state or local governmental units and officials to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  Any transfers in connection with the Plan are deemed

transferred subject to section 1146(a).

(d)     <u>Wind Down Payment</u> Pursuant to the APA, Buyer shall remit an amount to be set forth in the APA  to be held in the client trust account of Steinberg, Shapiro & Clark for the payment of allowed Professional Fees.


(e)     <u>Transfer of Bank Accounts and Cash Management System</u>. Pursuant to the APA, upon Closing the Debtors shall transfer their financial institution accounts to the Buyer. The Debtors or Liquidating Trustee shall open new accounts for their post-Effective Date wind down activities.

6.2     **<u>Revesting of Property in the Estate</u>**.     Upon the Effective Date, all of the Excluded Assets and other possible property of the Debtors not transferred to the Buyer or another Person shall vest in the Liquidating Trust, free and clear of all liens, claims, encumbrances and interests, and shall be administered by the Debtors and the Liquidating Trustee.

6.3     **<u>Liquidating Trustee</u>**. Upon the Effective Date, Homer McClarty, a chapter 7 panel trustee for the Bankruptcy Court for the Eastern District of Michigan, shall be designated as the Liquidating Trustee (the "<u>Liquidating Trustee</u>") to administer the Estate's assets in accordance with this Plan. His compensation will be $325 per hour plus reasonable out of pocket expenses, pursuant to a customary engagement letter to be entered into as of the Effective Date. He shall not be paid on a statutory or commission basis.  He shall secure a bond for this appointment.  In general, the Liquidating Trustee shall be the representative of the Debtors and their Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. In the event of the death or resignation of the Liquidating Trustee, then the designated Liquidating Trustee shall be designated by Debtors.

(a)     <u>General Duties and Powers of Liquidating Trustee</u>. The Liquidating Trustee shall have fiduciary duties to the Estate in the same manner that, but to no greater extent than would members of an official committee of creditors appointed pursuant to section 1102 of the Bankruptcy Code have fiduciary duties to the creditor constituents represented by such a committee. The Liquidating Trustee shall: (a) possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters related to the Bankruptcy Case and, in connection therewith, shall have the right to appear, to be heard, to participate in, and to receive notices on all matters involving the Debtors and the Bankruptcy Case brought before the Bankruptcy Court or other courts; (b) have the authority to act on behalf of the Debtors in all adversary proceedings, contested matters or civil actions pending in the Bankruptcy Court or elsewhere; and (c) have the authority to retain such personnel or professionals (including, without limitation, legal counsel, accountants, auditors and tax return professionals, and other agents, including any professionals that have provided professional services to the Debtors prior to the Effective Date) as he deems appropriate and compensate such personnel and

professionals as he deems appropriate, all without prior notice to or approval of the Bankruptcy Court.

(b)    <u>Liquidation of The Estates</u>. Subject to any applicable provisions of this Plan, the Liquidating Trustee shall take such steps as are reasonably necessary to collect and liquidate the assets vested in the Estate and to make Distributions to Holders of Allowed Claims in accordance with this Plan. In connection therewith, the Liquidating Trustee shall have the power and/or responsibility:

(i)    To file all necessary tax returns on behalf of the Debtors and their Estates, together with any other appropriate or necessary documents related to municipal, state, federal or other tax law;

(ii)    To make all Distributions to Holders of Allowed Claims as provided for or contemplated by the Plan;

(iii)    To object to any Claims (disputed or otherwise), with such objections to be made in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the Bankruptcy Court, except as ordered otherwise;

(iv)    To prosecute, collect, settle or compromise any Claim or cause of action belonging to the Estate, including initiating adversary proceedings, lawsuits, or civil actions in the name of the Debtors that are deemed reasonably necessary to carry out such objectives;

(v)    To maintain escrow accounts, reserve, or other deposit or banking accounts, and to maintain appropriate books and records;

(vi)    To pay fees incurred pursuant to 28 U.S.C. § 1930(a)(6) (as funded pursuant to the APA) and to file with the Bankruptcy Court and serve on the United States Trustee all required monthly or quarterly reports until such time as a final decree is entered closing this Chapter 11 Case or the Case is converted or dismissed, or the Court orders otherwise; provided that the Estate shall no longer be required to file and serve monthly operating reports, or may file and serve operating reports with respect to periods greater than one month, in the event the Liquidating Trustee is so advised by the United States Trustee;

(vii)    To abandon or destroy any property, records or documents that the Liquidating Trustee concludes have no meaningful or practical benefit to creditors of the Estate, are too burdensome or cost-prohibitive to maintain and preserve, or too impractical to liquidate and distribute;

(viii)    To wind-up the affairs of the Debtors including, but not limited to, causing the dissolution of the Debtors, seeking a final decree in the

21

Bankruptcy Case and closing the Bankruptcy Case; and

(ix)    To do all other acts or things not inconsistent with the provisions of the Plan that the Liquidating Trustee deems reasonably necessary or desirable with respect to implementing the Plan.

6.4    **Dissolution of the Debtors**.  The Liquidating Trustee may dissolve the Debtors prior to the closing of the Bankruptcy Case, and to take such actions, or file such documents reasonably necessary to effectuate such dissolution. Prior to dissolving the Debtors, the Liquidating Trustee may in his discretion maintain the corporate status of the Debtors if deemed reasonably necessary or desirable to aid in the winding down the Debtors' affairs and liquidating the assets in the Estates.

6.5    **Causes of Action**

(a)    <u>Causes of Action</u>. To the extent any Claims or causes of action, constitute Excluded Assets that are vested in the Estate, then in accordance with section 1123(b)(3) of the Bankruptcy Code, the Debtors and the Liquidating Trustee will retain and may (but shall not be required to) enforce all such causes of action except to the extent such Claims or causes of action have been waived, released or settled pursuant to this Plan. Specifically, the Debtors and the Liquidating Trustee retain any and all Avoidance Actions. The Liquidating Trustee shall prosecute the Avoidance Actions to the extent practicable and to the extent it determines that pursuing some or all of the Avoidance Actions is prudent and will maximize the value of the assets held by the Liquidating Trust.  This determination shall be solely made by the Liquidating Trustee. The failure of the Debtors to specifically list any Claim, cause of action, suit, or proceeding does not, and will not be deemed to, constitute a waiver or release by the Debtors or the Estates of such Claim, cause of action, suit, or proceeding.  No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action by virtue of, or in connection with, the confirmation, consummation of effectiveness of this Plan. The Liquidating Trustee or his successors or assigns exclusively may pursue such retained claims, demands, rights or Causes of Action, per the terms of the Liquidating Trust.  For purposes of clarification, Debtor's rights pursuant to the Sale and the Asset Purchase Agreement authorized by the Sale, are preserved

**6.6    Further Authorization**. The Liquidating Trustee, on behalf of the Debtors, shall be entitled to seek such orders, judgments, injunctions and rulings as it deems necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

6.7    **Execution of the Liquidating Trust Agreement**. On or before the Effective Date, the Liquidating Trustee and the Debtor on behalf of themselves and the Estate, will execute the Liquidating Trust Agreement in a form substantially similar to the form attached to the Disclosure Statement.  Upon the Effective Date,

all of the Debtor's officers, directors, managing members, general partners or other governing authorities shall be deemed to have resigned without the necessity of any further action or writing. Under no circumstances shall such parties be entitled to any compensation from the Debtor or the Liquidating Trustee for services provided after the Effective Date unless such individuals are subsequently employed by the Liquidating Trustee to assist him in the consummation of the Plan or in his administration of the Liquidating Trust.

6.8.    **Appointment of the Liquidating Trustee**. The Liquidating Trustee shall be authorized to execute documents on behalf of the Debtor and the Estate. Homer McClarty shall be the Liquidating Trustee.

6.9    **Powers and Responsibilities of Liquidating Trustee**

The Liquidating Trustee will be in control of and authorized and empowered to carry out the terms and conditions of this Plan and the Liquidating Trust Agreement and will have those responsibilities created by this Plan and the Liquidating Trust Agreement upon the terms and conditions summarized therein, and will, for the benefit of the Beneficiaries, exercise the rights and powers vested in it by this Plan and the Liquidating Trust Agreement in the same manner, and use the same degree of care and skill in his exercise as a prudent person would exercise and use under the circumstances in the conduct of the Liquidating Trustee's own affairs, and further agrees to receive and disburse all of the Remaining Assets in accordance with the terms thereof and this Plan. More specifically, without limitation, the Liquidating Trustee shall have the right, power, authority, standing, and approval, and shall be empowered to:

(a) perform all of the obligations and agreements of the Plan and the Liquidating Trust Agreement provided for herein;

(b) keep and maintain in a trust account for the benefit of the Liquidating Trust into which proceeds resulting from the initial receipt or from the sale or other disposition of, or from the income resulting from, all or any part of the liquidation of Debtor's Assets and/or the prosecution of Causes of Action;

(c) keep and maintain trust accounts for the benefit of the Liquidating Trust into which accounts the Trustee may place Disputed Claim Reserves;

(d)    The Liquidating Trustee may reserve sufficient monies equal to the distributions to which holders of Disputed Administrative Claims would be entitled if such Disputed Administrative Claims became Allowed Claims (the "Distribution Reserve");

(e) commence, continue, prosecute, litigate, and/or settle and compromise Claims and Causes of Action, by or against the Debtor and third parties on

23

behalf of the Liquidating Trust and for the benefit of the Beneficiaries thereof (Except as expressly provided in the Plan or any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), the Liquidating Trustee will have and shall retain after the Effective Date any and all rights and defenses that the Debtor had with respect to any Claim as of the Petition Date. All Claims of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed disallowed as of the Effective Date unless and until such Entity pays in full the amount that it owes such Debtor);

(f) object to any Claims (disputed or otherwise) at any time prior to the Distribution Date and to settle, compromise, withdraw, or litigate to judgment, objections to any and all Claims, regardless of whether the Claim was scheduled by Debtor and classified as undisputed, liquidated, and non-contingent, or otherwise, and to seek subordination of any Claim under the Bankruptcy Code or any other authority;

(g) make distributions in respect of Allowed Claims subsequent to the Effective Date in accordance with the Plan;

(h) take any actions necessary to the collection, receipt, or disposition of any Remaining Assets;

(i) compromise or settle disputes with respect to warranty claims or disputes, or debt obligations owed to the Debtor, its Estate, or the Liquidating Trust (to the extent they constitute Remaining Assets);

(j) execute and deliver all releases, satisfactions, and termination statements as may be required in connection with full payment of any debt obligation secured by any lien or security interest;

(k) retain and/or terminate professional persons without Court approval, in the Liquidating Trustee's discretion, to assist in the duties and responsibilities ascribed to him or her under this Plan and the Liquidating Trust Agreement. The reasonable fees and expenses of all professionals retained by the Liquidating Trustee shall be paid from the Remaining Assets without Court approval;

(l) satisfy all reporting requirements for the Liquidating Trust, and all assets held by or on behalf of the Liquidating Trust, to the relevant reporting authority;

(m) file with the Bankruptcy Court reports regarding the liquidation or other administration of property comprising the Remaining Assets, the distributions made by the Liquidating Trust, and other matters required to be included in such report;

(n) except as otherwise ordered by the Court, and subject to the terms of the Plan, pay any fees and expenses incurred by the Liquidating Trust on or after the Effective Date in accordance with the Liquidating Trust Agreement and without Court approval; and

(o) dissolve the Debtors.

(p) Subject to the other terms of the Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall also have the right, power, authority, standing, and approval to commence, continue, prosecute, litigate and/or settle and compromise Causes of Action and any other claim against third parties. The Liquidating Trustee shall also have the right, standing, and approval to object to the allowance of any Claim at any time prior to the making of a distribution to holders of Allowed Claims.

6.10    **Funding the Liquidating Trust.** On the Effective Date, all assets of the Estate, of whatever nature, that have not been transferred to Buyer, shall be transferred to the Liquidating Trust.

6.11    **Exculpation and indemnification.** Neither the Liquidating Trustee nor the firms or corporations representing him, or any of his employees, professionals or agents, shall in any way be liable for any acts of any of his employees, professionals or agents, except for acts undertaken by them in bad faith, gross negligence or willful misconduct, in the performance of their respective duties.

6.12    **Equity of Debtor.** As of the Effective Date, all issued and outstanding stock, options, warrants and any other rights to acquire stock of the Debtor shall be deemed extinguished and, thus, void, unless needed for purposes of winding up the financial affairs of Debtor.

6.13.    **Corporate Action**

(a)    Prior to, on, or after the Effective Date, as applicable, all matters provided for hereunder that would otherwise require approval of the shareholders, members, or directors of the Debtor shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date, as applicable, pursuant to applicable state law, without any requirement of further action by shareholders, members, directors, managers or partners of the Debtor.

(b)    The Debtor and the Liquidating Trustee is authorized to execute, deliver, file, or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions hereof.    The Chief Restructuring Officer is authorized to sign for the Debtor.

ARTICLE 7
INJUNCTIVE AND RELATED PROVISIONS

**7.1    Release of Claims and Termination of Equity Interests**

Except as otherwise provided in this Plan, the rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction of, and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor and the Estate, or any of their respective Assets. Except as otherwise provided in this Plan (i) on the Effective Date, all Claims against the Debtor will be deemed satisfied and released in full and (ii) all entities shall be precluded from asserting any Claims against the Liquidating Trustee or the Debtor and the Estate, their respective successors or assigns, or the Assets. The Confirmation Order shall be a judicial determination of release of all liabilities of the Debtor. Except as otherwise provided in the Plan, neither the Plan, nor entry of the Confirmation Order, nor any failure to object to a Claim shall have any res judicata, estoppel, or other preclusive effect as to the Debtor, the Liquidating Trustees, or their successors or assigns, with respect to any Cause of Action against any party; provided, however, that nothing in this Plan shall discharge any liabilities of the Debtor, arising after the entry of the Confirmation Order; provided, that, nothing in the Plan shall discharge any liability to a governmental entity under applicable environmental laws that a Debtor or any other Entity may have as the owner or operator of real property on and after the entry of the Confirmation Order.

**7.2    Injunction**

(a)    Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold, or may hold a Claim, Equity Interest, or other debt or liability that would be discharged upon Confirmation but for the provisions of section 1141(d)(3) of the Bankruptcy Code or an Equity Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan will be permanently enjoined from taking any of the following action on account of any such Claims, debts or liabilities or terminated Equity Interests or rights: (i) commencing or continuing in any manner any action or other proceedings against the Liquidating Trust other than to enforce any right to a distribution pursuant to the Plan; (ii) enforcing attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor or Liquidating Trust other than as permitted pursuant to clause (i) above; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtor, or Liquidating Trust; (iv) asserting a setoff or right of subrogation of any kind against any debt, liability or obligation due to the Debtor or the Liquidating Trust; and (v)

26

commencing or continuing any action, in any manner in any place that does not comply with or is inconsistent with the provisions of the Plan.

(b)    As of the Effective Date, all entities that have held, currently hold, or may hold any Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities that are released pursuant to the Plan will be permanently enjoined from taking any of the following actions against the Debtor or Liquidating Trust on account of such released claims, obligations, suits, judgments, damages, demands, debts, rights causes of action or liabilities: (i) commencing or continuing in any manner any action or other proceedings; (ii) enforcing, attaching, collecting or recovering in any manner, any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff or right of subrogation of any kind against any debt, liability or obligation due to any released entity; and (v) commencing or continuing any action, in any manner, in any place that does not comply with, or is inconsistent with, the provisions of the Plan.

(c)    By accepting distributions, or the possibility of receiving distributions, pursuant to the Plan, each holder of a claim or asserting a claim will be deemed to have specifically consented to the injunctions set forth in the Plan. The permanent injunction of the Plan shall apply to and inure to the benefit of, without limitation, the Debtor and the Liquidating Trust.

### 7.3    No Discharge

Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation will not discharge the Debtor.

### 7.4    De-Identification of the Hotel

Notwithstanding any other provision of Article 7 of the Plan or any provision of the Confirmation Order or APA, Debtors obligations to HHF with regard to de-identification of the hotel are not waived or released, and HHF retains all of its rights pursuant to the License Agreement with regard to asserting any claims arising thereof and, as of the rejection and termination of the Licensing Agreement, the automatic stay or any injunction provided by this Plan shall not apply to HHF with respect to its rights to enforce the de-identification of the hotel, including a claim for injunctive relief or specific performance in any court with appropriate jurisdiction.  Nothing in the Plan or Confirmation Order shall prevent HHF from asserting its rights under the License Agreement including, but not limited to, seeking stay relief to terminate or enforce termination of the License Agreement.

### 7.5    No Release of Guaranty to HHF

Nothing in the Plan or Confirmation Order shall constitute a release of the obligations of any guarantor under the License Agreement.

## ARTICLE 8

### DISTRIBUTIONS

8.1    **Disbursing Agent**. Unless otherwise provided for herein, all Distributions under this Plan shall be made by the Liquidating Trustee on behalf of the Debtors.

8.2    **Distributions of Cash**. Any Distribution of Cash made by the Liquidating Trustee on behalf of the Debtors may be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

8.3    **Delivery of Distributions.** The Distribution to a Holder of an Allowed Claim shall be made by the Liquidating Trustee on behalf of the Debtors (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to the Debtors after the date of any related proof of claim, (c) at the addresses reflected in the schedules if no proof of claim has been filed and the Debtors have not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtors' books and records. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Debtors or Liquidating Trustee are notified of such Holder's then-current address. Amounts in respect of undeliverable Distributions made in Cash shall be retained by the Debtors until such Distributions are claimed.

8.4    **Unclaimed Distributions** All Distributions returned to the Debtors or Liquidating Trustee and not claimed within six (6) months of return shall be irrevocably retained by the Debtors notwithstanding any federal or state escheat laws to the contrary for further payments or Distributions contemplated by the Plan.

8.5    **Distributions to Holders as of the Record Date**. All Distributions on Allowed Claims shall be made to the Record Holders of such Claims. As of the close of business on the Record Date, the Claims register maintained for the Bankruptcy Case shall be deemed closed, and there shall be no further change in the Record Holder of any Claim. The Debtors and Liquidating Trustee shall have no obligation to recognize any transfer of any Claim occurring after the Record Date. The Liquidating Trustee shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Record Date.

8.6    **Fractional Dollars**. Any other provision of this Plan notwithstanding, the Debtors may make, but shall not be required to make, Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual

payment may reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

8.7 **Withholding Taxes**. The Debtors or the Liquidating Trustee, as the case may be, shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements.

8.8 **Records Retention.** Debtor and the Liquidating Trustee shall not be required to retain any records of the Debtor or affiliates in their possession more than 6 months after the Effective Date. Notwithstanding the above, Debtor and the Liquidating Trustee may retain any or all of the records past this time period, and may abandon any or all records after the above 6-month period.

8.9 **Minimum Distribution.** Any other provision of the Plan notwithstanding, the Liquidating Trustee will not be required to make distributions of Cash less than $5 in value, and each such Claim to which this limitation applies shall be deemed satisfied in full. Those monies not distributed shall be paid into the Bankruptcy Court Registry Fund as unclaimed funds pursuant to Fed.R.Bankr.P. 3011.

8.10 **Setoffs.** The Debtor and Liquidating Trustee may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the rights and Causes of Action of any nature that the Estate and the Liquidating Trust may hold against the holder of any such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Liquidating Trustee of any such rights and Causes of Action that the Debtor or the Liquidating Trustee may possess against any such holder, except as specifically provided herein.

8.11 <u>**Provisions Regarding Disputed Claims**</u>

a. **Objections to Claims**. All parties in interest, shall be entitled to object to Claims, provided, however, no party in interest shall be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date, or (ii) that are Allowed by the express terms of this Plan. Unless extended by the Bankruptcy Court upon a party in interest's request made prior to the expiration of the then current deadline, the deadline for objecting to Claims shall be 60 days after the Effective Date.

b. <u>**No Distributions Pending Allowance**</u>. Except as otherwise

provided herein, no Distributions will be made with respect to any portion of a Claim unless and until any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

        c.    **Compromises and Settlements.** Pursuant to Bankruptcy Rule 9019(a), the Debtor may compromise and settle various Claims (i) against it and (ii) that it has against other persons. The Debtor expressly reserves the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against it and Claims that it may have against other persons up to and including the Effective Date. After the Effective Date, such right shall pass to the Liquidating Trustee and the Liquidating Trust shall be governed by the terms of the Liquidating Trust Agreement.  On and after the Effective Date, the Liquidating Trustee, on behalf of the Debtors and the Estates, shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims or any Retained Action without approval of the Bankruptcy Court. Notwithstanding the foregoing, the Liquidating Trustee may, in its sole discretion, seek approval from the Bankruptcy Court of a proposed settlement when such approval is deemed by the Liquidating Trustee to be necessary or desirable to achieve and consummate such settlement.

        d.    **Setoffs**. Subject to section 553 of the Bankruptcy Code, in the event the Debtors have a Claim or cause of action of any nature whatsoever against a Holder of a Claim, the Debtors (or as applicable, the Liquidating Trustee) may, but are not required to, set off or recoup the Debtors' Claim against such Holder's Claim (and any Distributions or other rights to receive property arising out of such Claim under the Plan). Neither the failure to set off nor the allowance of any Holder's Claim under the Plan shall constitute a waiver or release of any Claim or cause of action of the Debtors.

## ARTICLE 9

## CONDITIONS TO CONFIRMATION AND CONSUMMATION OF THE PLAN

    **9.1**    **Conditions to Confirmation**. The following are conditions precedent to the occurrence of the Confirmation Date, each of which must be satisfied or waived by the Debtors and the Buyer in accordance with Section 9.3.

        (a)    The entry of an order approving the Disclosure Statement and finding that it contains adequate information pursuant to section 1125 of the Bankruptcy Code; and

        (b)    The proposed Confirmation Order shall be in form and substance satisfactory to the Debtors and Buyer.

    **9.2**    **Conditions to the Effective Date**. The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing by the Debtors.

(a)   The Confirmation Order shall have been entered in a form and substance satisfactory to the Debtors and Buyer;

(b)   The Confirmation Order shall not have been stayed, vacated, reversed or modified;

(c)   The Closing Date for the Sale to Buyer shall have occurred; and

(d)   All material documents and agreements necessary to implement the Plan, including the APA, shall have been effected or executed.

**9.3   Waiver of Conditions**. The conditions set forth in Sections 9.1 and 9.2 that are capable of being waived may be waived at any time by a writing signed by an authorized representative of both the Debtors and the Buyer without notice or order of the Bankruptcy Court.

**9.4 Effects of Failure of Conditions**. In the event that one or more of the conditions specified in Section 9.2 of the Plan have not occurred (or been waived), upon notification submitted by the Debtors to the Bankruptcy Court: (a) the Confirmation Order, automatically and without further order of the Bankruptcy Court, shall be, and shall be deemed, vacated, null and void, with no force or legal effect whatsoever; (b) no distributions under the Plan shall be made; all Property of the Estates shall remain with (or revest in) the Debtors' Estates; (d) the Debtors and all Holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; and (e) the Debtors' obligations with respect to the Claims and interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims or interests by or against the Debtors or any other Person or Entity or to prejudice in any manner the rights of the Debtors, the Committee or any Person or Entity in any further proceedings involving the Debtors.

## ARTICLE 10

### EFFECT OF CONFIRMATION

**10.1   Injunction**. Entry of the Confirmation Order shall act as a permanent injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action satisfied, released, or discharged under this Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the fullest extent provided for or authorized by §§ 524 and 1141 thereof.

**10.2   Exculpation and Limitation of Liability in Connection With These Chapter 11 Proceedings**. The Debtors, the Senior Lender, the Buyer and the Liquidating Trustee and their respective members, managers, officers, directors, employees, advisors, attorneys, representatives, financial advisors, investment

bankers, or agents and any of such parties' successors and assigns, shall not have or incur, and are hereby released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or interest, or any other party-in-interest, or any of its respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the negotiation and filing of this Plan, the filing of the Bankruptcy Case, the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for their willful misconduct or gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities under this Plan. Notwithstanding anything to the contrary in the Plan, Surinder and Bhavneet Bhogal shall not be released from any claims by operation of confirmation of the Debtor's plan, as amended.

## ARTICLE 11
## RETENTION OF JURISDICTION

11.1 **Jurisdiction**. Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective date, the Bankruptcy Court shall, after the Effective Date, have or retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, to the fullest extent legally permissible, including but not limited to, jurisdiction for the following purposes:

(a)    To adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established herein;

(b)    To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated Claim, to establish the amount of any reserve required to be withheld from any distribution under this Plan on account of any disputed, contingent or unliquidated Claim;

(c)    To resolve all matters related to the rejection, and assumption and/or assignment of any Executory Contract or Unexpired Lease of the Debtor;

(d)    To hear and rule upon all Claims or causes of action commenced and/or pursued by the Debtors or Liquidating Trustee;

(e)    To hear and rule upon all applications for compensation of Professionals;

(f)    To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

(g)    To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Court;

(h)    To adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

(i)    To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estate and the payment of claims;

(j)    To determine any suit or proceeding brought by the Debtors and/or the Liquidating Trustee to recover property under any provisions of the Bankruptcy Code;

(k)    To hear and determine any tax disputes concerning the Debtors and to determine and declare any tax effects under this Plan;

(l)    To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

(m)    To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan;

(n)    To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which the Debtors sold any of its assets during the Bankruptcy Case; and

(o)    Resolve any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, the Liquidating Trust or any contract, instrument, release, or other agreement or document adopted in connection with the Plan or the Disclosure Statement;

(p)    Enter an order and/or the decree concluding the Chapter 11 Case; and

(q)    Otherwise enforce the provisions of the Plan.

**11.2    <u>Alternative Jurisdiction</u>**. In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter. If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto.

**11.3    <u>Final Decree</u>**. After the Confirmation Order has become a  Final Order,

the Liquidating Trustee or Debtor may file a motion for entry of a Final Decree. The powers and duties of the Liquidating Trustee shall continue after entry of the Final Decree. It is contemplated that the Liquidating Trustee will liquidate the Debtors' estates outside of Bankruptcy after entry of the Final Decree.

# ARTICLE 12

## MISCELLANEOUS PROVISIONS

**12.1  Modification of the Plan**. Subject to the limitations contained in the Plan: (i) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (ii) after the entry of the Confirmation Order, the Debtor may, and upon order of the Bankruptcy Court, amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

**12.2  Revocation of Plan** The Debtor reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to file subsequent plans. If the Debtor revokes or withdraws the Plan, or if entry of the Confirmation Order or the Effective Date does not occur, then: (i) the Plan shall be null and void in all respects; and (ii) nothing contained in the Plan shall: (a) constitute a waiver or release of any claims by or against, or against, or any Equity Interests in, such Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission of any sort by the Debtor or any other Entity.

**12.3  Substantive Consolidation.**

(a)  The Plan serves as a motion seeking, and entry of the Confirmation Order shall constitute, the approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date (but retroactive for solicitation and voting purposes), of the substantive consolidation for voting, confirmation and distribution purposes of the Chhatrala Grand Rapids, LLC, Case No. 18-03908-jtg, and Bhogal Enterprises, LLC, Case No. 19-3909-jtg.

(b)  In the event that the Bankruptcy Court orders partial, or does not order, substantive consolidation, the Debtors reserve the right to (i) proceed with no or partial Plan consolidation, (ii) propose one or more sub-Plans with respect to one or more Debtors, (iii) proceed with confirmation of one or more sub-Plans to the exclusion of the other sub-Plans, (iv) withdraw some or all of the sub-Plans, or (v) withdraw the Plan. Subject to the immediately preceding sentence, the Debtors'

inability to confirm any Plan consolidation or sub-Plan, or the Debtors' election to withdraw any Plan consolidation or sub-Plan, shall not impair confirmation or consummation of any other Plan consolidation or sub-Plan.

(c) In the event that the Bankruptcy Court does not order substantive consolidation as requested herein, (i) Claims against the applicable Debtors shall be treated as separate Claims with respect to the estates of such Debtors for all purposes, and such Claims shall be administered as provided in the applicable sub-Plan and (ii) the Debtors shall not be required to re-solicit votes with respect to the Plan or any applicable sub-Plan.

12.4 **Preparation of Tax Returns**. The Debtors or the Liquidating Trustee on behalf of the Debtors shall file all tax returns and other filings with governmental authorities and may file determination requests under section 505(b) of the Bankruptcy Code to resolve any Disputed Claim relating to taxes with a governmental authority.

12.5 **Headings**. The headings of the Articles and the sections of this Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

12.6 **No Admissions; Objection to Claims**. Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan.

12.7 **No Bar to Suits**. Except as otherwise provided in this Plan, neither this Plan or confirmation hereof shall operate to bar or estop the Debtors or the Liquidating Trustee on behalf of the Debtors from commencing any cause of action, or any other legal action against any Holder of a Claim or any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity, whether such cause of action, or any other legal action arose prior to or after the Confirmation Date and whether or not the existence of such cause of action, or any other legal action was disclosed in any disclosure statement filed by the Debtors in connection with this Plan or whether or not any payment was made or is made on account of any Claim.

12.8 **Exhibits/Schedules**. Any exhibits and schedules to this Plan and/or the Disclosure Statement, including the Plan Supplement, and all attachments thereto, are incorporated into and are a part of this Plan as if set forth in full herein.

12.9 **Further Assurances**. The Debtors and all Holders of Claims receiving Distributions under this Plan and all other parties in interest may and shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

12.10 **Disclaimer Regarding Tax Consequence**. Tax consequences to creditors and Interest Holders may result from confirmation of the Plan. Each Holder of a Claim or Interest should seek professional tax advice, including the evaluation of recently enacted or pending legislation, because recent changes in taxation may be complex and lack authoritative interpretation. No specific tax consequences to any Creditor or Holder of an Interest are represented, implied, or warranted. THE PROPONENT ASSUMES NO RESPONSIBILITY FOR THE TAX EFFECT THAT CONSUMMATION OF THE PLAN WILL HAVE ON ANY
GIVEN HOLDER OF A CLAIM OR INTEREST. HOLDERS OF CLAIMS OR INTERESTS ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN TO THEIR INDIVIDUAL SITUATION

12.11 **Subsequent Conversion**. In the event that following the Effective Date any Bankruptcy Case is converted to a case under chapter 7 of the Bankruptcy Code, all remaining property of the Liquidating Trust as of conversion will become property of that Debtor's Chapter 7 estate.

12.12 **United States Trustee Fees** The Debtors shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6), as funded pursuant to the APA. After confirmation, the Debtors, or the Liquidating Trustee on behalf of the Debtors, shall file with the Bankruptcy Court and the United States Trustee a quarterly post confirmation report, in the format specified by the U.S. Trustee, for each quarter that the case remains open. The United States Trustee quarterly fee shall be calculated on all disbursements made following the Effective Date by the Debtors, or the Liquidating Trustee on behalf of the Debtors, whether pursuant to the Plan or not, until the Bankruptcy Case is closed, converted to chapter 7 or dismissed. The Bankruptcy Court shall retain jurisdiction to decide any post confirmation dispute concerning the United States Trustee quarterly fees.

12.13 **Post Effective Date Disputes**. After the Effective Date, if the Debtors, or the Liquidating Trustee on behalf of the Debtors, allegedly fail to comply with the terms of the Plan, any aggrieved creditor who wishes to enforce its rights under the Plan must file a motion with the Bankruptcy Court for whatever relief is appropriate, and the Debtors, or the Liquidating Trustee on behalf of the Debtors, shall retain all defenses to any such motion.

12.14 **Post-Effective Date Professionals' Fees and Final Fee Applications.** The Liquidating Trustee may pay reasonable, documented fees of Retained Professionals incurred after the Effective Date, pursuant to and subject to the terms of the Liquidating Trust Agreement.

12.15 **Successors and Assigns.** The rights, benefits and obligations of any Entity named or, administrator, successor or assign of such Entity.

12.16 **Governing Law.** Except to the extent that the Bankruptcy Code or

Bankruptcy Rules apply, the provisions of any contract, instrument, release, or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Michigan, without giving effect to the principles of conflict of laws thereof.

12.17    **Reservation of Rights.** Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtor or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of Debtor or any party-in-interest prior to the Effective Date.

12.18    **omitted**

12.19    **Further Assurances.** The Debtor, all holders of Claims receiving distributions hereunder and all other parties-in-interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the plan or the Confirmation Order.

12.20    **Filing of Additional Documents.** On or before the Effective Date, the Debtor may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

12.21 **No Stay of Confirmation Order.** The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable.

[signature on next page]

Respectfully submitted,
Chhatrala Grand Rapids, LLC, and Bhogal Enterprises, LLC

/s/ Bhavneet Bhogal
By: Bhavneet Bhogal


STEINBERG SHAPIRO & CLARK

/s/ Mark H. Shapiro                    /s/ Robert N. Bassel
Mark H. Shapiro (P43134)               Robert N. Bassel (P 48420)
Attorney for Debtor                    Attorney for Debtor
25925 Telegraph Road, Suite 203        P.O. Box T
Southfield, MI 48033                   Clinton, MI 49236
248-352-4700                           (248) 677-1234
shapiro@steinbergshapiro.com           bbassel@gmail.com

**EXHIBIT A**

**LIQUIDATING TRUST AGREEMENT AND
DECLARATION OF TRUST**

**AMONG**

**CHHATRALA GRAND RAPIDS, LLC AND BHOGAL ENTERPRISES, LLC
DEBTORS-IN-POSSESSION IN THE CHAPTER 11 CASE**

**AND**

**HOMER MCCLARTY AS LIQUIDATING TRUSTEE**

**DATED AS OF _____, 2020**

**CHHATRALA GRAND RAPIDS, LLC; AND BHOGAL ENTERPRISES, LLC
LIQUIDATING TRUST AGREEMENT AND DECLARATION OF TRUST**

This Liquidating Trust Agreement and Declaration of Trust (the "Agreement") is made and entered into as of the ____ day of _____, 2020 (the "Effective Date"), by and among Chhatrala Grand Rapids, LLC; and Bhogal Enterprises, LLC, debtors-in-possession in the Chapter 11 Case and Homer McClarty ("Mr. McClarty") (the "Liquidating Trustee"). Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Plan of Liquidation proposed by the Debtor and as the same may from time to time be amended (the "Plan").

WHEREAS, on September 16, 2019, the Debtors filed their voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Western District of Michigan (the "Bankruptcy Court");

WHEREAS, the Debtors filed their Disclosure Statement and Plan of Liquidation proposed by the Debtor and as the same may from time to time be amended (the "Plan");

WHEREAS, on _____, 2020, the Bankruptcy Court entered its Order Confirming the Plan of Liquidation proposed by the Debtor (the "Confirmation Order");

WHEREAS, the Plan, among other things, provides for the creation of the Liquidating Trust, the vesting and/or transfer of the Remaining Assets to the Liquidating Trust, the appointment of the Liquidating Trustee to administer the Remaining Assets, to, among other things, pursue and settle Claims, Causes of Action and Avoidance Actions in accordance with and subject to the provisions of the Plan and this Agreement, to liquidate Remaining Assets, and to distribute the proceeds from such liquidation to beneficiaries of the Liquidating Trust (each a "Liquidating Trust Beneficiary," and collectively the "Liquidating Trust Beneficiaries").

NOW, THEREFORE, in order to comply with the terms and conditions of the Plan, the parties hereto agree as follows:

**ARTICLE I
DEFINITIONS**

1.1   Rules of Interpretation. All capitalized terms used and not otherwise defined herein shall have the respective meanings assigned thereto in the Plan, or, if not defined in the Plan and defined in the Bankruptcy Code, the meanings

assigned thereto in the Bankruptcy Code unless, in either case, the context clearly requires otherwise. All references to the Plan contained herein mean the Plan as it may have been modified pursuant to the Confirmation Order.

      1.2    Certain Definitions. For all purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires, the terms defined in this Section shall have the meanings assigned to them in this Section, and shall include the plural as well as the singular, and the masculine as well as the feminine.

"Agreement" means this Liquidating Trust Agreement and Declaration of Trust dated as of _____ __, 2020.

"Liquidating Trust" means the Liquidating Trust created pursuant to this Agreement and established on the Effective Date.

"Liquidating Trust Assets" and "Remaining Assets" means those assets transferred to and owned by or preserved for the Liquidating Trust pursuant to the Plan.

"Liquidating Trust Beneficiary" means the holder of an Allowed Claim that receives a beneficial interest in the Liquidating Trust in accordance with the Plan.

"Liquidating Trustee Professionals" means professionals retained by the Liquidating Trustee.

"Liquidating Trustee" means Mr. McClarty or any successor named pursuant to this Agreement.

"Net Proceeds" means such amounts collected from the sale or liquidation of assets after payment of all costs and expenses of such sale or liquidation, including, without limitation, attorney fees and liquidating trust fees.

"Tax Code" means the Internal Revenue Code of 1986, as amended.

### ARTICLE II
### LIQUIDATING TRUST CREATION AND GOVERNANCE

      2.1    Purpose of Liquidating Trust. The Debtors, in compliance with the Plan, hereby constitute and create the Liquidating Trust for the primary purpose of liquidating and distributing the Liquidating Trust Assets transferred to it and with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purposes of the Liquidating Trust.

The Liquidating Trustee shall have full authority to take any steps necessary to administer this Agreement, including, without limitation, the duty and obligation to hold, conserve, and protect the Liquidating Trust Assets and to collect on, sell, or otherwise liquidate or dispose of the Liquidating Trust Assets, and to distribute the Net Proceeds of such disposition to the Liquidating Trust Beneficiaries as provided for in the Plan in as prompt, efficient and orderly a fashion as possible, in accordance with and as set forth in the provisions of Article III of this Agreement.

The Liquidating Trustee shall serve until death, resignation or termination of the Liquidating Trust pursuant to the Plan and this Agreement.

2.2    Acceptance by Liquidating Trustee. The Liquidating Trustee is willing and does hereby accept the appointment to serve as a Liquidating Trustee and to hold and administer the Liquidating Trust Assets pursuant to the terms of this Agreement and the Plan.

2.3    Name of Liquidating Trust. The Liquidating Trust established hereby shall bear the name "Chhatrala Liquidating Trust." In connection with the exercise of the powers as trustee, the Liquidating Trustee may use such name or such variation thereon as he sees fit, or may use his own name, as trustee.

2.4    Transfer of Liquidating Trust Assets to Liquidating Trust. On the Effective Date and in accordance with the Plan, the Debtors shall and shall be deemed to have irrevocably transferred to the Liquidating Trust, any Assets for liquidation and distribution in accordance with the Plan.

The Liquidating Trust Assets shall be held and managed by the Liquidating Trustee pursuant to the Plan and this Agreement. The Debtor shall, as needed and as reasonably requested by the Liquidating Trustee, execute and deliver or cause to be executed and delivered to, or upon the order of the either of the Liquidating Trustee, all such confirmatory deeds or other instruments, in recordable form where necessary or appropriate, and the Debtor shall take or cause to be taken such other action as the Liquidating Trustee may reasonably deem necessary or appropriate, in order to vest or perfect in or confirm to the Liquidating Trust (or upon the order of the Liquidating Trustee) title to and possession of all of the Liquidating Trust Assets.

2.5    Vesting of Assets. On the Effective Date, and subject to the applicable provisions of the Plan, and all prior orders of the Bankruptcy Court, all property treated by the Plan, any minutes, and general corporate records of the Debtor, and any books and records relating to the foregoing not otherwise treated by the Plan, shall vest in the Liquidating Trust free and clear of all liens, Claims, encumbrances, and other interests and shall thereafter be administered, liquidated by sale, collection, recovery, or other disposition and distributed by the Liquidating Trust in accordance with the terms of this Agreement and the Plan.

## ARTICLE III
## LIQUIDATING TRUST ADMINISTRATION

3.1     Limitations on Liquidating Trustee. The Liquidating Trustee shall carry out the purposes of the Liquidating Trust and the direction contained herein and in the Plan.

3.2     Liquidating Trustee' Powers and Responsibilities. The Liquidating Trustee shall have the rights and powers set forth in the Plan and this Agreement, including, but not limited to, the powers of a debtor-in-possession under Bankruptcy Code sections 1107 and 1008. The Liquidating Trustee shall be governed in all things by the terms of this Agreement and the Plan.

The Liquidating Trustee will be in control of and authorized and empowered to carry out the terms and conditions of this Plan and the Liquidating Trust Agreement and will have those responsibilities created by this Plan and the Liquidating Trust Agreement upon the terms and conditions summarized therein, and will, for the benefit of the Beneficiaries, exercise the rights and powers vested in it by this Plan and the Liquidating Trust Agreement in the same manner, and use the same degree of care and skill in his exercise as a prudent person would exercise and use under the circumstances in the conduct of the Liquidating Trustee's own affairs, and further agrees to receive and disburse all of the Remaining Assets in accordance with the terms thereof and this Plan. More specifically, without limitation, the Liquidating Trustee shall have the right, power, authority, standing, and approval, and shall be empowered to:

(a) perform all of the obligations and agreements of the Plan and the Liquidating Trust Agreement provided for herein;

(b) keep and maintain in a trust account for the benefit of the Liquidating Trust into which proceeds resulting from the initial receipt or from the sale or other disposition of, or from the income resulting from, all or any part of the liquidation of Debtor's Assets and/or the prosecution of Causes of Action;

(c) keep and maintain trust accounts for the benefit of the Liquidating Trust into which accounts the Trustee may place Disputed Claim Reserves;

(d)     The Liquidating Trustee may reserve sufficient monies equal to the distributions to which holders of Disputed Administrative Claims would be entitled if such Disputed Administrative Claims became Allowed Claims (the "Distribution Reserve");

(e) commence, continue, prosecute, litigate, and/or settle and compromise Claims and Causes of Action, by or against the Debtor and third parties on behalf of the Liquidating Trust and for the benefit of the Beneficiaries thereof

(Except as expressly provided in the Plan or any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), the Liquidating Trustee will have and shall retain after the Effective Date any and all rights and defenses that the Debtor had with respect to any Claim as of the Petition Date. All Claims of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed disallowed as of the Effective Date unless and until such Entity pays in full the amount that it owes such Debtor);

(f) object to any Claims (disputed or otherwise) at any time prior to the Distribution Date and to settle, compromise, withdraw, or litigate to judgment, objections to any and all Claims, regardless of whether the Claim was scheduled by Debtor and classified as undisputed, liquidated, and non-contingent, or otherwise, and to seek subordination of any Claim under the Bankruptcy Code or any other authority;

(g) make distributions in respect of Allowed Claims subsequent to the Effective Date in accordance with the Plan;

(h) take any actions necessary to the collection, receipt, or disposition of any Remaining Assets;

(i) compromise or settle disputes with respect to warranty claims or disputes, or debt obligations owed to the Debtor, its Estate, or the Liquidating Trust (to the extent they constitute Remaining Assets);

(j) execute and deliver all releases, satisfactions, and termination statements as may be required in connection with full payment of any debt obligation secured by any lien or security interest;

(k) retain and/or terminate professional persons without Court approval, in the Liquidating Trustee's discretion, to assist in the duties and responsibilities ascribed to him or her under this Plan and the Liquidating Trust Agreement. The reasonable fees and expenses of all professionals retained by the Liquidating Trustee shall be paid from the Remaining Assets without Court approval;

(l) satisfy all reporting requirements for the Liquidating Trust, and all assets held by or on behalf of the Liquidating Trust, to the relevant reporting authority;

(m) file with the Bankruptcy Court reports regarding the liquidation or other administration of property comprising the Remaining Assets, the distributions made by the Liquidating Trust, and other matters required to be included in such report;

(n) except as otherwise ordered by the Court, and subject to the terms of the Plan, pay any fees and expenses incurred by the Liquidating Trust on or after the Effective Date in accordance with the Liquidating Trust Agreement and without Court approval;

(o) Take any other action authorized by the Plan or necessary and appropriate to implement the Plan; and

(o) dissolve the Debtor.

Subject to the other terms of the Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall also have the right, power, authority, standing, and approval to commence, continue, prosecute, litigate and/or settle and compromise Causes of Action and any other claim against third parties or the Debtor. The Liquidating Trustee shall also have the right, standing, and approval to object to the allowance of any Claim at any time prior to the making of a distribution to holders of Allowed Claims, including administrative expenses.

3.3    Omitted

3.4    Trust Distributions. The Liquidating Trustee shall make continuing efforts to liquidate all assets of the Debtor and the Estate (including, without limitation, all Causes of Action and all Assets). The Liquidating Trustee shall distribute to the Liquidating Trust Beneficiaries (as such may have been determined at such time) the net income of the Liquidating Trust plus all Net Proceeds of the liquidation all in accordance with the Plan and this Agreement, except for amounts retained as reasonably necessary to maintain the value of the Liquidating Trust Assets and to meet all claims and contingent liabilities (including Disputed Claims) required to be paid. Distributions shall be made in accordance with the Plan, and the Liquidating Trustee shall not unduly prolong the duration of the Liquidating Trust.  The Liquidating Trustee is authorized to escrow the amount necessary to pay Disputed Claims until those claims are determined by a Final Order.

3.5    Compliance with Tax Requirements. To the extent applicable, the Liquidating Trustees shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. The Liquidating Trustee shall be authorized to take any actions that they determine to be necessary, appropriate or desirable to comply with such withholding or reporting requirements. Notwithstanding any other provision of the Plan or this Agreement, each Entity receiving a distribution of Cash pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such distribution, including income, withholding and other Tax obligations. Any recipient of a distribution of Cash or other property may

be compelled to execute any required tax withholding or reporting form prior to the receipt of a distribution of Cash or other property.

3.6    Preservation of Causes of Action and Avoidance Actions. In accordance with Bankruptcy Code section 1123(b)(3), and except as otherwise provided in the Plan or the Confirmation Order, the Liquidating Trust shall retain all of the Causes of Action and Avoidance Actions, and other similar claims arising under applicable state laws or the Bankruptcy Code. The Liquidating Trustee and the Liquidating Trust may enforce, sue on, settle or compromise (or decline to do any of the foregoing) any or all of the Causes of Action and Avoidance Actions, subject to the terms hereof.

3.7    Settlement of Causes of Action and Avoidance Actions. After the Effective Date, the Liquidating Trust and/or the Liquidating Trustee, in accordance with the terms of the Plan and this Agreement, will determine whether to bring, settle, release, compromise, enforce or abandon such rights (or decline to do any of the foregoing).  The Liquidating Trustee shall have the authority to compromise claims.

3.8    Interest Beneficial Only. The beneficial interests held by a Liquidating Trust Beneficiary hereunder shall not entitle any such beneficiary to any title or direct ownership interest in or to the Liquidating Trust Assets as such, or to any right to call for a partition or division of the same, or to require an accounting.

3.9    Evidence of Beneficial Interest. Ownership of a beneficial interest in the Liquidating Trust shall not be evidenced by any certificate, security or receipt or in any other form or manner whatsoever.

3.10  No Transfer of Beneficial Interests. Liquidating Trust Beneficiaries shall not have the right to convey, assign, sell or otherwise transfer any beneficial interest in the Liquidating Trust, except by bequest or devise or pursuant to the laws of intestate succession.

3.11  Effect of Death, Incapacity or Bankruptcy. The death, incapacity or bankruptcy of any of the Liquidating Trust Beneficiaries during the terms of this Liquidating Trust shall not (a) operate to terminate the Liquidating Trust; (b) entitle the representatives or creditors of the deceased beneficiary to an accounting; (c) entitle the representatives or creditors of the deceased beneficiary to take any action in the Bankruptcy Court or elsewhere for the distribution of the Liquidating Trust Assets or for a partition thereof; or (d) otherwise affect the rights and obligations of any of the other Liquidating Trust Beneficiaries.

3.12  Effect of Liquidating Trust on Third Parties. There is no obligation on the part of any purchaser or purchasers from the Liquidating

Trustee or any agent of the Liquidating Trustee, or on the part of any other persons dealing with the Liquidating Trustee or any agent of the Liquidating Trustee, to oversee the application of purchase money or other consideration passing to the Liquidating Trustee or any agent of the Liquidating Trustee or to inquire into the validity, expediency or propriety of any such transaction by the Liquidating Trustee or any agent of the Liquidating Trustee.

3.13 Duration of the Liquidating Trust. The Liquidating Trust shall terminate on the date on which all of the Liquidating Trust Assets have been distributed in accordance with the terms of this Agreement and the Plan (the "Termination Date"). Every effort shall be made to see that the Termination Date shall be no later than the time reasonably necessary to accomplish the purposes of the Liquidating Trust as contemplated by this Agreement and the Plan.

3.14 No Reversions. Notwithstanding anything to the contrary in the Plan or this Agreement, in no event shall any of the Liquidating Trust Assets revert to or be distributed to the Debtor.

## ARTICLE IV
## LIQUIDATING TRUSTEE
## AND SUCCESSOR LIQUIDATING TRUSTEE

4.1     Standard of Care. Except in the case of fraud, willful misconduct or gross negligence, neither the Liquidating Trustee nor members, designees, counsel, financial advisors or any duly designated agent or representative of the Liquidating Trustee shall be liable for any loss or damage by reason of any action taken or omitted by them pursuant to the discretion, powers and authority conferred on them by the Plan or this Agreement.

4.2     No Liability for Acts of Predecessors. No successor Liquidating Trustee shall be in any way liable or otherwise responsible for the acts or omission of any Liquidating Trustee in office prior to the date on which he becomes a Liquidating Trustee unless such successor Liquidating Trustee expressly assumes such liability or responsibility.

4.3     Reliance on Documents or Advice of Professionals. Except as otherwise provided herein, the Liquidating Trustee may rely and shall be protected in acting in reliance upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed to be genuine and to have been signed or presented by the proper party or parties. The Liquidating Trustee may also engage and consult with legal and accounting professionals to be selected by them and shall not be liable for any action taken or suffered in reliance upon the advice of such professionals.

4.4     No Personal Obligation for Liquidating Trust Liabilities. Persons dealing with the Liquidating Trustee shall look only to the Liquidating Trust to satisfy any liability incurred by the Liquidating Trustee to such person in carrying out the terms of the Liquidating Trust, and the Liquidating Trustee shall not have any personal or individual obligation to satisfy any such liability.

4.5     Exercise of Power. Except as otherwise specifically set forth herein or in the Plan, the Liquidating Trustee shall not be required to procure authorization from the Bankruptcy Court in the exercise of any power conferred upon him by this Agreement.

4.6     Fees and Expenses. On or before the Effective Date, the Debtor shall fund the Liquidating Trust in accordance with the terms of the Plan in an amount deemed by the Debtor to be sufficient to pay the fees and expenses of the Liquidating Trustee and the Liquidating Trustee Professionals. Except as otherwise provided in the Plan, compensation of the Liquidating Trustee and the costs and expenses of the Liquidating Trustee and the Liquidating Trust (including, without limitation, professional fees and expenses) shall be paid (a) to the extent related to the administration, preservation, maintenance or liquidation of Assets, from the Net Proceeds of the liquidation of such Assets or the Assets themselves. The reasonable fees and expenses of the Liquidating Trustee or the Liquidating Trustee Professionals shall be paid as necessary to discharge the Liquidating Trustee's duties under the Plan and the Liquidating Trust Agreement. In the event of a dispute with respect to the fees and expenses of the Liquidating Trustee or the Liquidating Trustee's Professionals, the undisputed portion of such fees and expenses may be paid pending the resolution of the disputed portion of such fees and expenses, which payment shall not require an order of the Bankruptcy Court approving such payment. The Liquidating Trustee is entitled to deduct all fees and expenses reasonably incurred by the Liquidating Trustee and/or the Liquidating Trustee's Professionals in administering, preserving, maintaining or liquidating Assets from the Net Proceeds of such Assets prior to making any Distribution of such proceeds under the Plan. The payment of fees and expenses of the Liquidating Trustee and the Liquidating Trustee's Professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

4.7     Retention of Professionals and Compensation Procedure. On and after the Effective Date, the Liquidating Trustee may engage such professionals and experts as may be deemed necessary and appropriate by the Liquidating Trustee to assist the Liquidating Trustee in carrying out the provisions of the Plan and this Agreement. For services performed from and after the Effective Date, Liquidating Trustee Professionals shall receive compensation and reimbursement of expenses in a manner to be determined by

the Liquidating Trustee. Mr. McClarty (and to the extent required based on conflicts, his designee) is authorized to retain and shall engage the services of Steinberg Shapiro & Clark, Robert Bassel, and any other professional he deems prudent,  for the prosecution of Causes of Action, Avoidance Actions and Claims resolution and objections, and for all other services required hereunder.

4.8    Liquidating    Trustee    Indemnification.    In    addition    to    any indemnification provided for under the Plan, the Liquidating Trust shall indemnify, hold harmless and reimburse the Liquidating Trustee and his agents against and from any and all loss, liability, expense or damage which either may incur or sustain, in good faith and without fraud, willful misconduct or gross negligence, in the exercise and performance of any of their powers and duties under this Agreement, or for any act or omission in connection with, or arising out of, administration of the Plan or the property to be distributed under the Liquidating Trust, except for gross negligence or willful misconduct.

4.9 Conflicting Claims. In the event the Liquidating Trustee becomes aware of any disagreement or conflicting claims with respect to the Liquidating Trust Assets, or if any Liquidating Trustee in good faith is in doubt as to any action which should be taken under this Agreement, the Liquidating Trustee shall have the absolute right at his election to do any or all of the following:

(a) To the extent of such disagreement or conflict, or to the extent deemed by him necessary or appropriate in the light of such disagreement or conflict, withhold or stop all further performance under this Agreement (save and except for the safekeeping of the Liquidating Trust Assets) until the Liquidating Trustee is satisfied that such disagreement or conflicting claims have been fully and finally resolved; or

(b) file a suit in interpleader or in the nature of interpleader in the Bankruptcy Court and obtain an order requiring all persons and parties involved to litigate in the Bankruptcy Court their respective claims arising out of or in connection with this Agreement; or

(c) file any other appropriate motion for relief in the Bankruptcy Court.

4.10 Successor Liquidating Trustee. In the event that a Liquidating Trustee resigns or otherwise ceases to serve as Liquidating Trustee, a successor Liquidating Trustee shall be designated. A Liquidating Trustee may resign upon written notice, which resignation shall become effective upon the selection of a successor Liquidating Trustee, and the acceptance by the successor Liquidating Trustee of its appointment as Liquidating Trustee. Any successor Liquidating Trustee shall be subject to the same qualifications and shall have the same rights, powers, duties and discretion, and otherwise be in the same position, as

the originally named Liquidating Trustee. Wherever reference is made in this Agreement to the Liquidating Trustee, the same shall be deemed to refer to the successor Liquidating Trustee acting hereunder from time to time. The Successor Liquidating Trustee may be chosen by the Liquidating Trustee or appointed by the Bankruptcy Court.

4.11 Records. The Liquidating Trustee shall maintain good and sufficient books and records of account relating to the Liquidating Trust Assets and the management thereof, all transactions undertaken by the Liquidating Trustee, all expenses incurred by or on behalf of the Liquidating Trust and all distributions either contemplated or effectuated under the Plan or this Agreement.

4.12 omitted

## ARTICLE V
## MISCELLANEOUS

5.1    Applicable Law. The Liquidating Trust created herein shall be construed, regulated and administered under the laws of the State of Michigan and the United States of America, including the Bankruptcy Code.

5.2    Headings. The enumerated headings contained in this Agreement are for the convenience of reference only and are not intended to have any substantive significance in interpreting the same.

5.3    Partial Invalidity. If any provision of this Agreement shall for any reason be held invalid or unenforceable by any bankruptcy court, governmental agency or arbitrator of competent jurisdiction, such invalidity or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

5.4    Entire Agreement. This Agreement (including the recitals), together with the Plan, the Confirmation Order and the documents referred to therein, constitute the entire agreement by and among the parties and there are no representations, warranties, covenants or obligations except as set forth herein and in the Plan. This Agreement supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions written or oral, of the parties hereto, relating to any transaction contemplated hereunder. Except as otherwise specifically provided herein, nothing in this Agreement is intended or shall be construed to confer upon or give any person other than the parties hereto and the Liquidating Trust Beneficiaries any rights or remedies under or by reason of this Agreement.

5.5    Notices. Any notice or other communication by the Liquidating Trust to any of the Liquidating Trust Beneficiaries shall be deemed to have been sufficiently given, for all purposes, when mailed by first-class mail, postage prepaid, or transmitted by hand delivery, and addressed to such beneficiary at its address as shown in the records of the Liquidating Trustee. Any notice or other communication which may be or is required to be given, served or sent to the Liquidating Trust shall be in writing and shall be mailed by first-class mail, postage prepaid, or transmitted by hand delivery, addressed to: Chhatrala Grand Rapids, LLC; and Bhogal Enterprises, LLC Liquidating Trust, Attn: Homer McClarty,  Morgan & McClarty, 19785 West Twelve Mile Road, #331. Southfield, Michigan 48076.  Each of the beneficiaries and the Liquidating Trustee may designate by notice in writing, a new address to which any notice, demand, request or communication may thereafter be so served or sent. Each notice, demand, request or communication which shall be mailed or delivered in the manner described above shall be deemed sufficiently given, served, sent and received for all purposes, three days after it is deposited in the U.S. mail as described above or at such time as it is delivered to the addressee, whichever is earlier.

5.6    Tax Identification Numbers. The Liquidating Trustee may require any of the Liquidating Trust Beneficiaries to furnish to the Liquidating Trustee its employer or taxpayer identification number as assigned by the Internal Revenue Service and the Liquidating Trustee may condition any distribution to any of the Liquidating Trust Beneficiaries upon receipt of such identification number.

5.7    Waiver. No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver by such party of any right or remedy pursuant thereto. Resorting to one form of remedy shall not constitute a waiver of alternative remedies.

5.8    Tax Treatment and Obligation to File Returns. It is intended that the Liquidating Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of section 301.7701-4(d) of the Treasury Regulations. The Liquidating Trust shall be considered a "grantor" trust, and the Liquidating Trust Beneficiaries shall be treated as the grantors and deemed owners of the Liquidating Trust. The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to section 1.671-4(a) of the Treasury Regulations. As a grantor trust, the Liquidating Trust shall not have any separate liability for federal income taxes relating to or arising from, the conveyance, preservation or liquidation of Liquidating Trust Assets. However, if it is later determined that a tax liability of the Liquidating Trust arises, the Liquidating Trustee shall be responsible for withholding all taxes required by law, and shall timely file all required

federal, state or local tax returns, including information reporting returns, and shall promptly pay all taxes determined to be due. If it is determined that any taxes are owed by the Liquidating Trust, the Liquidating Trustee may pay from the Liquidating Trust Assets any such tax liability arising out of the operations of the Liquidating Trust or ownership of Liquidating Trust Assets. The Liquidating Trust may establish a reserve sufficient to pay any accrued or potential tax liability arising out of the operations of the Liquidating Trust or ownership of Liquidating Trust Assets. Notwithstanding anything herein to the contrary, in calculating and making the payments due to Allowed Claims under the Plan, the Liquidating Trustee shall be authorized to deduct from such payments any necessary withholding amount.

       5.9    Tax Treatment of Transfer of Assets to the Liquidating Trust. For federal income tax purposes, the transfer of Liquidating Trust Assets to the Liquidating Trust will be treated as a deemed transfer to the Liquidating Trust Beneficiaries for all purposes of the Tax Code (e.g., Section 61 (a)(12), 483, 1001, 1010, and 1274) followed by a deemed transfer by such beneficiaries to the Liquidating Trust.

       5.10 Valuation of Transferred Assets. The Liquidating Trustee shall value the property transferred to the Liquidating Trust and notify in writing the Liquidating Trust Beneficiaries of such valuations, and thereafter the Liquidating Trustee and the Liquidating Trust Beneficiaries shall be consistent in the use of such valuations for all applicable reporting purposes, including for all federal income tax purposes.

       5.11 Relationship to Plan. The principal purpose of the Agreement is to aid in the implementation of the Plan, and therefore, this Agreement incorporates by reference and is subject to the provisions of the Plan in all respects. In the event of a conflict between the terms and provisions of the Agreement and the terms and provisions of the Plan, the terms and provisions of the Plan shall control.  Distributions shall be made as required by the Bankruptcy Code and the Debtor's plan and Order confirming plan.  In the event of conflict, the Order confirming Plan shall control over the Plan.

       5.12 Intent of Parties to Establish Trust. This Agreement is not intended to create and shall not be interpreted as creating, a corporation, association, partnership, or joint venture of any kind for purposes of federal income tax or any other purpose.

IN WITNESS WHEREOF, the undersigned has caused this instrument to be executed as of the day and year first above written.


CHHATRALA GRAND RAPIDS, LLC
and BHOGAL ENTERPRISES, LLC


By:_____


LIQUIDATING TRUSTEE


By:_____